**In the Interest of J. R. and S. R., Children.**

**Paul and Connie, natural grandparents, Appellants.**

**No. 67090.**

Supreme Court of Iowa.

Feb. 17, 1982.

Michael Kennedy, of Barker, Cruise & Kennedy, Iowa City, for appellants.

Thomas J. Miller, Atty. Gen., John G. Black, Sp. Asst. Atty. Gen., and Brent D. Hege, Asst. Atty. Gen., for the State.

Sharon A. Mellon, of Mellon & Spies, Iowa City, guardian ad litem.

Considered by LeGRAND, P. J., and McCORMICK, ALLBEE, McGIVERIN, and LARSON, JJ.

LARSON, Justice.

Paul and Connie, the natural, paternal grandparents of minors J.R. and S.R., appeal the juvenile court's rulings that the grandparents lacked standing to intervene in proceedings to terminate the parental rights of the children's natural parents, Curtis and Rose Ann, and that the best interests of the children required adoption by anonymous third parties, rather than by the grandparents, to assure that the natural parents never again have contact with the children.

On May 7, 1981, pursuant to an emergency order, three-year-old J. R. and nine-month-old S. R. were removed from the farmhouse rented by their parents. The house was absolutely filthy, and both children were suffering from severe malnutrition and other medical problems. We will not detail the children's sufferings, some of which still affect them, except to state that this was a very extreme case of gross and wanton neglect. The parents, who have some history of abuse and neglect of J. R. in this state and Arizona, apparently fled shortly before authorities arrived at the house, and they have not been seen since.

Following the CHINA adjudication of each child, the State filed petitions to terminate the parents' parental rights on grounds of abandonment under sections 232.116(2) and 600A.8(3), The Code. The grandparents then filed an Iowa R.Civ.P. 75 petition for intervention in the termination proceedings, requesting to be heard on the transfer of guardianship and custody of the children following termination of parental rights.

In a bifurcated proceeding, the juvenile court terminated the parental rights of Curtis and Rose Ann on grounds of abandonment. This ruling is not challenged on appeal. The court then allowed evidence by the grandparents prior to issuing its rulings on standing and custody.

*I. Grandparents' right of intervention.*

The juvenile court erred in ruling that the grandparents lacked standing to intervene in the dispositional phase of the termination proceedings. Iowa R.Civ.P. 75 provides:

Any person interested in the subject matter of the litigation, or the success of either party to the action, or against both parties, may intervene at any time before trial begins, by joining with plaintiff or defendant or claiming adversely to both.

Not all rules of civil procedure are applicable to juvenile proceedings. *See In re Hewitt,* 272 N.W.2d 852, 859 (Iowa 1978) (Iowa R.Civ.P. 66 governing special appearance is not applicable to juvenile proceedings). However, the rules of civil procedure "govern the practice and procedure in all courts of the state, except where they expressly provide otherwise, or statutes not affected hereby provide different procedures in particular courts or cases." Iowa R.Civ.P. 1. The termination of parental rights provisions of the juvenile justice code

do not set out procedures for intervention. Motions to intervene would not unduly formalize or restrict such proceedings. Therefore, we hold that Iowa R.Civ.P. 75 is applicable to juvenile court termination proceedings.

■ The grandparents concede that they are not "necessary parties" to the termination proceedings within the meaning of sections 232.111(3)(b) and 232.112(1), The Code; however, this is not determinative of the intervention issue. The test of the right to intervene is "interest," not necessity. *Schimerowski v. Iowa Beef Packers Inc.*, 196 N.W.2d 551, 555 (Iowa 1972); *Price v. King*, 255 Iowa 314, 319, 122 N.W.2d 318, 322 (1963). "One interested in an action is one who is interested in the outcome or result thereof because he has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree therein." 59 Am.Jur.2d *Parties* § 138, at 567 (1971).

■ Section 232.117(3), The Code provides:

If the court concludes that facts sufficient to sustain the petition have been established by clear and convincing evidence, the court may order parental rights terminated. *If the court terminates the parental rights of the child's natural or adoptive parents, the court shall transfer the guardianship and custody of the child to one of the following*:

    *a.* The department of social services.

    *b.* A child placing agency or other suitable private agency, facility or institution which is licensed or otherwise authorized by law to receive and provide care for the child.

    *c. A relative or other suitable person.*

(Emphasis added.) Under this statute, the juvenile court has a duty to transfer guardianship and custody of the child upon terminating parental rights. *See* § 4.1(36), The Code. Under section 232.117(3)(c), transfer to grandparents is one of the alternatives to be considered.

Section 600A.9(1), The Code provides:

Subsequent to the hearing on termination of parental rights under this chapter, the juvenile court shall make a finding of facts and shall:

    *a.* Order the petition dismissed; or,

    *b.* Order the petition granted. *The juvenile court shall appoint a guardian and a custodian or a guardian only.* An order issued under this paragraph shall include the finding of facts. Such finding shall specify the factual basis for terminating the parent-child relationship and shall specify the ground or grounds upon which the termination is ordered.

(Emphasis added.) Under this statute, the juvenile court has a duty to appoint a guardian and may appoint a custodian for the child upon terminating parental rights. Although appointment alternatives are not specified, grandparents are not excluded as possible guardians and custodians.

■ Because section 600A.9(1), and particularly section 232.117(3)(c), grant grandparents a legal right to be considered as guardians and custodians of children following termination of parental rights, we hold that the grandparents are sufficiently "interested in the subject matter" of these termination proceedings so as to have a right to intervene under Iowa R.Civ.P. 75. A rule or statute granting the right to intervene is remedial and is to be liberally construed. *Schimerowski v. Iowa Beef Packers Inc.*, 196 N.W.2d at 555; 59 Am. Jur.2d *Parties* § 134, at 501. It is thus unnecessary to consider either the grandparents' assertion that they have a statutory right to intervene pursuant to section 598.35, The Code (grandparents visitation rights), or the State's assertion that termination of parental rights also terminates grandparents' visitation rights.

II. *The children's best interests.*

■ While the juvenile court ostensibly denied the petition of intervention, that ruling was made only after all parties, including the grandparents, had made a full record on the issue of future custody and guardianship. Our review of the record is de novo. *In re Goettsche*, 311 N.W.2d 104,

106 (Iowa 1981). We give weight to the fact findings of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those findings. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981); Iowa R.App.P. 14(f)(7).

 The juvenile court specifically found and concluded:

> There is no question in the Court's mind of the fitness of the grandparents to care and raise these children, and there is no question of the natural love the grandparents have for the children. If it was simply a matter of qualifications of the grandparents, there is no question in the Court's mind, but that the grandparents would have the children.

However, the court ruled the children should be placed for adoption by anonymous third parties because it feared that if custody were awarded to the grandparents, the natural parents might find the children and cause them further harm.

These grandparents live in Ohio. They had made several trips to Iowa in their attempts to obtain custody of these children. They are young grandparents, in their mid-forties. They showed a substantial net worth, with no indebtedness, steady employment, and ownership of an adequate home on approximately six acres of land. An in-home study by an Ohio social service office confirmed that the grandparents' home was suitable for placement of the children. The State concedes, and the juvenile court found, it would be ideal for the children except that the parents might reappear and take them. The grandparents testified they would not permit that to happen but, as the State argued and the court found, the risk was considered to be too great; an anonymous adoption, it was concluded, would be best for the children. While there is concededly a risk in providing an opportunity for future neglect by their parents, the quality of the proposed home in this case and the desirability of maintaining an identity with the children's natural family outweigh the benefits of an anonymous adoption. We conclude the best interests of the children will be served by placement with their grandparents.

This case is reversed and remanded to the juvenile court for entry of an order transferring custody and guardianship of J. R. and S. R. to their paternal grandparents, Paul and Connie.

REVERSED AND REMANDED.