**In the Interest of CHAD, A Minor,**

**Appeal of MALINDA, Natural Mother.**

**No. 65797.**

Supreme Court of Iowa.

April 21, 1982.

Robert J. Todd of the Edward W. Dailey Law Offices, P. C., Burlington, for appellant.

David Arthur Adams, Burlington, for minor child–appellee.

Gerald D. Goddard of Cray, Walter, Cray, Loeschen & Goddard, Burlington, for intervenor–appellees.

Thomas J. Miller, Atty. Gen., John G. Black, Sp. Asst. Atty. Gen. and Brent Hege, Asst. Atty. Gen., for State of Iowa–appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, ALLBEE and McGIVERIN, JJ.

McGIVERIN, Justice.

Malinda, natural mother of the minor child, Chad, appeals trial court's order which terminated her parental rights with Chad pursuant to sections 600A.8(4), The Code 1977, and 232.114(5), The Code 1979. Because of our view of the case, we consider only two issues:

1) Did trial court err in allowing the maternal grandfather and his wife to intervene?

2) Was there clear and convincing evidence justifying the termination?

Our resolution of the second issue requires us to reverse trial court's ruling and reinstate Malinda's parental rights.

This case began with the birth of Chad on March 24, 1978. His unmarried mother, Malinda, resided in a foster home in Des Moines at the time of the birth. She was sixteen years old and had been previously adjudicated a child in need of assistance (CHINA). Robert, her father, and his wife, Louise, intervenors in this proceeding, resided in Burlington.

The child was taken by Malinda to a Des Moines hospital on April 2 for an examination and treatment of an illness. While Chad was at the hospital on April 3, the Iowa State Department of Social Services (DSS) filed a petition to also have him adjudicated a child in need of assistance pursuant to chapter 232, The Code 1977. The statutory grounds alleged were sections 232.2(13)(f) (lack of proper care due to faults of parents) and 232.2(13)(h) (conditions injurious to health and welfare of child). The supporting factual allegation was that "proper nurturing is not being shown" and that Chad had been fed cold infant-formula and had been taken out of the home against a physician's order. The same day the petition was filed, the Des Moines County juvenile court ordered that Chad "be taken into immediate custody and placed forthwith to the care, custody and control of Des Moines County Dept. of Social Services." § 232.7, The Code 1977. It was arranged that Chad be placed with a foster parent on April 5. On April 3, the juvenile court ordered that Malinda be admitted to the State Juvenile Home in Toledo, where she had been placed in the past. This placement was also to occur on April 5.

Before the planned April 5 placement in the State Juvenile Home, Malinda ran away from her foster home in Des Moines. She went to Mesa, Arizona, where she remained until her return to Iowa on May 5. In her absence, Chad was placed in a foster home in Des Moines County on April 5.

On May 3, 1978, the juvenile court conducted a hearing on the CHINA petition and adjudicated Chad to be a child in need of assistance. Malinda did not attend the hearing. Her attorney was present and admitted all of the allegations of the CHINA petition. The court placed Chad in the temporary legal custody of Robert, his maternal grandfather, and Louise, subject to DSS protective supervision. § 232.33, The Code 1977.

Malinda returned to Des Moines County on May 5. She lived at the Mental Health Institute in Mount Pleasant for approximately one month, and then was placed in

the Helen Ellis Girls Home in Keokuk. On November 1, Malinda began to reside in Burlington under an independent living arrangement with DSS supervision.

On June 12, 1979, David Arthur Adams, petitioner in this action, and also attorney and guardian ad litem for the minor child, filed a petition for termination of Malinda's parental rights pursuant to chapter 600A, The Code 1977. The statutory grounds alleged for the termination were sections 600A.8(4) (refusal or neglect of parental duties) and 600A.8(1) (release of custody).[1] Section 600A.8(4), The Code 1977, was repealed as of July 1, 1979. 1978 Iowa Acts, 67th G.A., Ch. 1088, § 97.

On August 15, petitioner amended the petition, alleging additional legal grounds for termination under section 232.114, which became effective July 1, 1979. The new grounds were sections 232.114(5) (child adjudicated CHINA cannot be returned to parent) and 232.114(2) (abandonment).

Trial court held hearings and took testimony in this matter from August 13, 1979, until July 25, 1980, generating a transcript in excess of 2200 pages. Much of the record involves a bitter battle between Malinda and her father, Robert, as to custody rights to the child. Accordingly, the background of each was examined in detail and at considerable expense. The court entered judgment on September 30, 1980, terminating the parental rights of Malinda and the natural father with respect to the minor child, Chad, transferring guardianship and legal custody to Robert and Louise, and retaining jurisdiction pursuant to section 232.116, The Code 1979, to remove the guardian.

The natural father had signed a consent to termination of parental rights and the parent-child relationship, section 232.114(1), The Code 1979, and does not appeal. Malinda, however, appeals the termination order.

■ I. *Intervention of grandparents.* Malinda contends the court erred in permitting Robert and Louise to intervene in this proceeding. We recently resolved this contention adversely to Malinda's position in *In re J. R. and S. R.*, 315 N.W.2d 750, 751–52 (Iowa 1982), holding that grandparents have a right to intervene in proceedings for the termination of parental rights. Also, Robert and Louise had a right to intervene as custodians of Chad. § 232.111, The Code 1979; Iowa R.Civ.P. 75. There is no error in this assignment.

■ II. *Merits of the termination.*[2] Malinda asserts that there was not clear and convincing evidence to support trial court's termination of her parental rights. We agree.

■ Our review of proceedings to terminate a parent-child relationship is de novo. *J. R. and S. R.*, 315 N.W.2d at 752; *In re Goettsche*, 311 N.W.2d 104, 106 (Iowa 1981). We give weight to the fact findings of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those findings. *J. R. and S. R.*, 315 N.W.2d at 753; *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981); Iowa R.App.P. 14(f)(7). Central to a determination of this nature are the best interests of the child. *Dameron*, 306 N.W.2d at 745.

■ Trial court applied section 600A.8, The Code 1977, to events preceding July 1, 1979, and section 232.114, The Code 1979, to facts thereafter.[3] Section 600A.8, The Code 1977, provides, in relevant part:

---

1. Petitioner later withdrew the section 600A.8(1) ground.

2. Malinda raised two constitutional claims in her appeal: 1) She challenged the constitutionality of sections 600A.8(4), The Code 1977, and 232.114(5), The Code 1979, under U.S.Const. amend. XIV; and 2) she questioned whether an amendment to the petition to terminate her parental rights violated her right of due process and deprived trial court of in personam jurisdiction over the issues raised in the amend-

ment. "We have long held we will not consider a constitutional question on appeal when another question is decisive." *Ehlinger v. Mardorf*, 285 N.W.2d 27, 28 (Iowa 1979). Our resolution of the question presented in this division obviates the need to address Malinda's constitutional claims.

3. Malinda argues that chapter 232, The Code 1979, applies retrospectively to all cases pending on July 1, 1979. We do not agree. Section 232.114 is substantive and applies prospective-

The juvenile court shall base its findings and order . . . on clear and convincing proof. The following shall be . . . grounds for ordering termination of parental rights:

\* \* \* \* \* \*

4. A parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent-child relationship.

Section 232.114, The Code 1979,[4] provides, in pertinent part:

[T]he court may order the termination of both the parental rights with respect to a child and the relationship between the parents and the child on any of the following grounds:

\* \* \* \* \* \*

2. The court finds that there is clear and convincing evidence that the child has been abandoned.

\* \* \* \* \* \*

5. The court finds that:

a. The child has been adjudicated a child in need of assistance pursuant to section 232.96; and

b. The custody of the child has been transferred from his or her parents for placement pursuant to section 232.102 for at least twelve months; and

c. There is clear and convincing evidence that the child cannot be returned to the custody of his or her parents as provided in section 232.102.

Section 232.114(5) requires reference to section 232.102, which provides, in part:

6. The duration of any placement made after an order pursuant to this section shall be for an initial period of six months. At the expiration of that period, the court shall hold a hearing and review the placement in order to determine whether the child should be returned

home, an extension of the placement should be made, or a termination of the parent-child relationship proceeding should be instituted. The placement should be terminated and the child returned to his or her home if the court finds by a preponderance of the evidence that the child will not suffer harm in the manner specified in section 232.2, subsection 5. . . .

Section 232.2(5) provides, insofar as relevant to the facts of this case:

*"Child in need of assistance"* means an unmarried child:

a. Whose parent . . . has abandoned the child.

b. Whose parent . . . has physically abused or neglected the child, or is imminently likely to abuse or neglect the child.

c. Who has suffered or is imminently likely to suffer harmful effects as a result of:

(1) Conditions created by the child's parent . . . or

(2) The failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child.

\* \* \* \* \* \*

g. Whose parent . . . fails to exercise a minimum degree of care in supplying the child with adequate food, clothing or shelter or refuses other means made available to provide such essentials.[5]

Trial court found that Malinda had, pursuant to section 600A.8(4), "substantially, continuously, and repeatedly refused and neglected to comply with the duties imposed upon her by the parent-child relationship." The court also found Chad had not been abandoned pursuant to section 232.-114(2), The Code 1979. With regard to section 232.114(5), the court found: a) that Chad had been adjudicated a child in need of assistance; and b) had been in the custody of Robert and Louise for at least twelve

---

ly. See *In re O'Neal*, 303 N.W.2d 414, 419 (Iowa 1981); *Smith v. Korf, Diehl, Clayton & Cleverley*, 302 N.W.2d 137, 138 (Iowa 1981); *State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330, 332 (Iowa 1976); § 4.5, The Code.

4. Section 232.114, The Code 1979, has been renumbered section 232.116, The Code 1981.

5. Section 232.2(5)(g) has been amended. 1979 Iowa Acts, 68 G.A. Ch. 56, § 1.

months. However, the court's finding that "this young man would suffer emotionally and physically if he was returned to the full-time custody of his mother" does not constitute the finding required by section 232.114(5)(c).[6]

■ Trial court's order of termination, therefore, seemed to be based only on section 600A.8(4), The Code 1977. However, we also analyze section 232.114, The Code 1979, in our de novo review, because to neglect such an analysis might put Malinda in the position where she would be entitled to keep her parental rights pursuant to section 232.114, The Code 1979, but would lose them pursuant to a prior, now-revoked statute, section 600A.8(4), The Code 1977. Such a result does not comport with section 232.1, The Code 1979, which provides: "This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in his or her own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state." In other words, there is a rebuttable presumption that the best interests of the child are served by custody of the natural parents. *See Santosky v. Kramer,* —— U.S. ——, ——, 102 S.Ct. 1388, ——, 71 L.Ed.2d 599, 606 (1982) ("fundamental liberty interest of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State."); *Alsager v. District Court of Polk County,* 406 F.Supp. 10, 16 (S.D.Iowa 1975) (parents possess a fundamental liberty and privacy interest in maintaining the integrity of their family unit), *aff'd in part,* 545 F.2d 1137 (8th Cir. 1976); *In re Lewis,* 257 N.W.2d 505, 510 (Iowa 1977) (parental right to integrity of the familial relationship, unless by conduct it be forfeited). It would be anomalous and inequitable if section 232.114, The Code 1979, would leave the parent-child relationship intact, while 600A.8(4), The Code 1977,

required termination of the parent-child relationship. Thus sections 600A.8(4), The Code 1977, and 232.114, The Code 1979, must be analyzed.

A. *Section 600A.8(4), The Code 1977.* Basically, trial court found that a variety of less than optimal past behavioral characteristics of Malinda constituted refusal and neglect to comply with duties imposed upon her by the parent-child relationship. We disagree. However, recital of those unfortunate past incidents as well as the less than successful background of her father, Robert, as a custodial parent, would add nothing to our jurisprudence. The record indicates that Malinda, age 20, is now married.

The record also shows that Malinda is capable of meeting and has met her parental duties when allowed contact with the child. She has provided for the physical needs of Chad during visitation. DSS employees testified that her care of Chad during visitation was appropriate. Her general housekeeping skills are sufficient. She also has displayed an ability to meet the emotional needs of Chad. Malinda has demonstrated an ability to maintain employment during these proceedings. A former supervisor testified she performed her duties "extremely well." Malinda has undergone marked improvement in her emotional makeup since the birth of Chad in 1978. Although she may not have been emotionally secure when Chad was born, the record indicates she is more able now to handle her role as mother.

■ We find no clear and convincing proof that Malinda substantially, continuously, or repeatedly refused or neglected to comply with the duties engendered by the parent-child relationship. On the contrary, she has been ready, willing and able to assume her role as mother of Chad, but has been prevented from doing so by the prolonged pendency of this action. Trial court

---

**6.** The intervenor-grandparents contend that trial court found termination was justified under section 232.114(5), The Code 1979. Although we do not so read trial court's September 30,

1980, findings, even if such an interpretation were correct we also would reverse trial court on the merits as to the section 232.114 grounds alleged.

erred in finding that Malinda should have her parental rights terminated on the basis of section 600A.8(4), The Code 1977.

**B.** *Section 232.114, The Code 1979.* Trial court found that Malinda had not abandoned Chad pursuant to section 232.114(2), The Code 1979. We agree. "Abandonment involves a giving up of parental rights and responsibilities accompanied by an intent to forego them." *In re Burney,* 259 N.W.2d 322, 324 (Iowa 1977). No abandonment occurred here.

Trial court correctly found the first two steps in a section 232.114(5), The Code 1979, analysis had been met. Chad was in fact adjudicated a child in need of assistance and had been placed out of Malinda's custody for more than twelve months. However, the final prong of section 232.114(5) was not met. Section 232.114(5)(c), in keeping with the fundamental right to familial integrity mentioned in section 232.1, required the court to find, on the basis of clear and convincing evidence, that the child cannot be returned to the custody of his parents as provided in section 232.102.

The reference to section 232.102 creates a burden of proof problem that we have recognized, but not previously resolved. *See In re Dameron,* 306 N.W.2d 743, 744, 747 n.4 (Iowa 1981); *In re Adkins,* 298 N.W.2d 273, 278 (Iowa 1980). The problem is that section 232.114(5)(c) requires clear and convincing proof that the child cannot be returned to the custody of the parents, whereas section 232.102(6) requires that temporary placement be terminated and the child returned to his home if the court finds, by a preponderance of the evidence, that the child will not suffer harm in the manner specified in section 232.2(5). *See, e.g., In re Blackledge,* 304 N.W.2d 209, 214–15 (Iowa 1981). We resolve this conflicting standard of proof problem by hold-

ing that in the termination of parental rights context, the clear and convincing standard of section 232.114(5) prevails and applies to the showing of harm required pursuant to section 232.2(5). In other words, before a termination of parental rights can occur under section 232.114(5), there must be clear and convincing proof that the child will suffer harm in the manner specified in section 232.2(5). This is the minimal burden of proof now required in this type of case by the due process clause of U.S.Const. amend. XIV. *Santosky v. Kramer,* —— U.S. ——, ——, 102 S.Ct. 1388, ——, 71 L.Ed.2d 599, 603 (1982).

We find that there has been no showing by clear and convincing proof that Chad will suffer any of the harms catalogued in section 232.2(5) by being returned to the custody of Malinda. The only subsection that could even arguably be involved in this case is section 232.2(5)(c)(1). This subsection obtains a broad reach by the use of the word "conditions." We recognized this situation in *In re Wall,* 295 N.W.2d 455, 460 (Iowa 1980), where we held "conditions" as used in 232.2(5)(c)(1) was unconstitutionally vague on its face and as applied in that case.

There were no adequately proven grounds alleged under section 232.114, The Code 1979, to justify termination of the parental rights of Malinda.

Trial court erred in its ruling terminating Malinda's rights on the basis of sections 600A.8(4), The Code 1977, and 232.114, The Code 1979. We conclude that the September 30, 1980, order terminating Malinda's parental rights in the minor child Chad must be and hereby is reversed.[7]

REVERSED AND REMANDED.

---

**7.** We conclude it is also in the best interest of Chad for trial court to expedite the question of his custody on remand pursuant to section 232.102, The Code 1979. We found no evidence that any of the harms listed in section 232.2(5), The Code 1979, were or will be present if Chad is returned to his mother.

Thus, under the operation of section 232.102(6), unless new evidence that occurred since September 30, 1980, would mandate otherwise, Chad could be returned to Malinda as soon as possible under DSS supervision, if appropriate, and released from the state of limbo in which he has languished for the past four years.