**In the Interest of K.J.F. and L.P.F., Children.**

**Appeal of STATE of Iowa.**

**No. 87–864.**

Court of Appeals of Iowa.

April 20, 1988.

Thomas J. Miller, Atty. Gen., Charles K. Phillips, Asst. Atty. Gen., and Rebecca A.

Belcher, Asst. Co. Atty., for appellant State.

Thomas P. Lenihan, of Reed & Lenihan, Des Moines, for appellee mother.

Karla Fultz, Des Moines, guardian ad litem, for the children.

Heard by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

HAYDEN, Judge.

The State appeals the ruling of the juvenile court refusing to terminate the parental rights to K.F., a boy born in July 1980, and to L.F., a girl born in October 1983, of E.F., their natural mother. The State sought termination pursuant to Iowa Code section 232.116(5). The juvenile court concluded the State failed to show by clear and convincing evidence the children cannot be returned to the custody of E.F. *See* Iowa Code § 232.116(5)(c). We affirm.

On May 21, 1984, K.F. and L.F. were removed from the care of E.F. due to improper supervision. The children had been left with a series of caretakers, including a sixteen-year-old runaway who had left them in downtown Des Moines. K.F., then four years old, was found wandering behind the YWCA. L.F., then seven months old, was found near a bench in front of a Quik Trip. The children were then left with an acquaintance of E.F. When E.F. arrived to pick the children up from this friend's home, she was arrested on California charges of assault with a deadly weapon. These charges stemmed from E.F.'s alleged attempt to run over K.F., Sr., the children's father (she was in her car and he was on his motorcycle). The children were removed and, on May 25, 1984, they were adjudicated by stipulation to be children in need of assistance. By August 6, 1984, E.F. had been released from jail. The California charges were later dismissed.

From August 1984 to November 1985, a number of review hearings were held. Generally, the orders issued in reference to these hearings noted E.F. had not stabilized her residence nor completed the required psychological examination. E.F. had, however, made some progress, so the court consistently continued the children's placement in foster care and encouraged E.F. to fully comply with her parenting contract with the Department of Human Services (DHS). The DHS first recommended termination proceedings at the review hearing in November 1985. Its recommendation was based primarily on E.F.'s lack of compliance with the parenting contract. However, shortly thereafter E.F. completed her psychological examination and continued to make some progress.

In June 1985 E.F. gave birth to another child, T.B. This child was briefly removed from her care in the summer of 1986 due, in large part, to the volatile nature of the relationship E.F. had commenced with D.M. The police were frequently called to their residence by complaints from neighbors of fighting. During this time E.F. was still changing her residence, although less frequently than she had previously done. These changes made E.F. virtually unavailable to social workers.

In August 1986 the termination petition was filed. The State contended E.F.'s parenting skills had not improved since the removal of K.F. and L.F. in 1984 and E.F. was still unable to care for them. The State also sought termination of the parental rights of K.F., Sr., the father of K.F. and L.F. The juvenile court determined K.F., Sr., had abandoned the children, thus justifying termination of his parental rights. He has not appealed this ruling. The court also determined the State had not shown by clear and convincing evidence K.F. and L.F. could not be returned to the custody of E.F. This appeal followed.

■ The principles governing our review of the juvenile court are well-settled. Our review is de novo; we review the facts as well as the law and adjudicate rights anew on those propositions properly preserved and presented to us. *In re O'Neal*, 303 N.W.2d 414, 422 (Iowa 1981). Central to our determination in this matter are the best interests of K.F. and L.F. *In re Interest of Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of future

care that parent is capable of providing. *Id.* Additionally, there is a rebuttable presumption the children's best interests are served by custody of the natural parent. *In re Interest of Chad*, 318 N.W.2d 213, 218 (Iowa 1982).

As noted by the juvenile court, twelve months after their removal, the children could not have been returned to the custody of E.F. Termination of her parental rights would have been justified. Not surprisingly, the State relies heavily on evidence of E.F.'s unfitness at that time. However, by May 1987, when the termination hearing was held, the situation had changed. By then, E.F. had undergone two psychological evaluations and received therapy from a clinical psychologist. She had established a stable home which is appropriate for the rearing of K.F. and L.F. Her relationship with D.M. had stabilized and matured. In short, E.F. had made substantial progress. Accordingly, the juvenile court concluded it could find "no reason why the children should not be returned to her at this time."

We concur with this conclusion. Although E.F. initially demonstrated little progress, her significant advances since 1986 indicate she is now able to care for her children.

AFFIRMED.