**In the Interest of M.H., C.H., C.H., and A.H., Children**

**M.H., Father, and S.H., Mother, Appellants.**

No. 88–1374.

Court of Appeals of Iowa.

May 23, 1989.

Stephen A. Kenkel, Toledo, for appellant mother.

Patrick L. Wilson, Marshalltown, for appellant father.

Thomas J. Miller, Atty. Gen., Katherine S. Miller–Todd, Asst. Atty. Gen., and Bret Beeren, County Atty., for the State.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

SACKETT, Judge.

Parents of four children appeal an order determining the children to be children in need of assistance and placing the children in foster care. We affirm the order finding the children to be children in need of assistance. We remand to the trial court for further proceedings consistent with the directions of this opinion.

The children were born in 1980, 1981, 1983, and 1986. On June 8, 1988, an order was entered adjudicating all four to be children in need of assistance and determining removal from the parental home was necessary to avoid imminent danger and the children should be placed in foster care. The trial court's order contained no finding of fact to support its conclusion the removal was necessary to avoid imminent danger. Such findings would have been helpful to this court on review. On September 7, 1988, the court, after finding there were ongoing serious problems with the children's hygiene, personal hygiene and the condition of their clothing, continued the out-of-home placement.

## I.

The parents appeal. They first contend there is not clear and convincing evidence to show the children are likely to suffer harm from the parents' failure to exercise a reasonable degree of care in supervising them. We disagree. The family history is marked with instability. There is evidence the children have not been adequately supervised, on at least one occasion a child was denied medical attention and the children and the home are not clean. The father has been noticeably absent from the home for extended periods. The mother was not educated beyond the eighth grade and has had some difficulty organizing and carrying out the tasks necessary to care for the children. We find these factors sufficient to meet the burden of finding the children to be children in need of assistance and we affirm that part of the order.

## II.

The parents next contend the children should not have been placed in foster care and the foster placement should not have continued.

The real issue is were reasonable efforts made to prevent or eliminate the removal from the parental home prior to foster placement. We note at the outset this is not a case involving physical or sexual abuse of children. Nor is it a case where the mother has not remained in the home to care for the children. The mother has stayed at home. Other than an ear infection, apparently untreated, there is no evidence these children have suffered serious harm.

Dr. Jerry Wille, a family practice specialist, testified about his relationship with the family. He said the mother came at appropriate times and for appropriate reasons. The children appeared to be healthy, active children and were not malnourished. Nowhere were signs they were treated inappropriately. He said he had seen dirtier kids and cleaner kids.

The major problem is cleanliness and the mother's ability to perform all tasks necessary for the well being of four young children with little or no help from the father. The problems obviously also are magnified because the family lives at poverty level and lived in substandard housing. The required services are (1) house cleaning, (2) laundry help, (3) supplemental child care, and (4) transportation for food and medical care. The question is, can the delivery of these services be made to the family home without destruction of the family unit.

Section 232.102(4) provides wherever possible the court should permit the child to remain at home. There is a rebuttable presumption the best interests of children are served when custody remains with their natural parents. *In re Chad*, 318 N.W.2d 213, 218 (Iowa 1982). We are always guided by a child's best interest. *See In re Chad*, 318 N.W.2d at 213. By promoting autonomous families we best promote the interests of children as well as those of parents. *See* Wald, *State Intervention on Behalf of Neglected Children: Standards for Removal of Children* 28 Stan.L.Rev. 623, 638 (1976). Generally children's needs are best met by helping parents meet their needs. *See id.* at 638.

Separating children from parents has a negative impact on children, even children from bad homes. Most children are strongly attached to their parents and as far as the child's emotions are concerned, interference with parental ties, whether to a psychologically fit or unfit parent, are extremely painful. *Id.* at 645. Removal from a home generates insecurity in a child and affects the child's ability to form future attachments. The inability to form attachments may permanently impair a child's ability to form living relationships. *Id.* at 670. The quality of foster care is not guaranteed. Foster children are frequently subject to multiple placements, making it difficult for them to achieve stable emotional development. *Id.* at 645–46.

Foster care is expensive and costs considerably more per month than the best in-home programs. *Id.* at 646. Additionally, under federal law an agency cannot be reimbursed for the child's out-of-home care unless a reasonable effort has been made to keep the child in the home. *See* 42 U.S.C. § 671(a)(15).[1] *See also Native Village of Stevens v. Smith*, 770 F.2d 1486 (9th Cir.1985), cert. denied, 475 U.S. 1121, 106 S.Ct. 1640, 90 L.Ed.2d 185 (1986); *Matter of Burns*, 519 A.2d 638 (Del.Supr.1986).

Furthermore, when children are removed, the family unit splintered and the children exposed to different environments and disciplines, the parents' task when the family is reunited can only be more difficult. It is realistic to assume the parent is going to find it easier to improve parenting skills by having the children remain with him or her rather than putting the children in foster care where they have very limited contact with parents. Unfortunately, also, as happened here, siblings from larger families are frequently separated on removal.

Additionally, we cannot assure a decision to place a child in foster care will result in an advantageous placement. We are being told the need for foster care in Iowa is reaching crisis proportions; only half of the children in need of foster care in Iowa in March 1989 had been placed with foster families, leaving the others in licensed group-care facilities and emergency shelters. Also, there is pressure on licensed

---

1. Section 671 provides in applicable part: **State plan for foster care and adoption assistance.** (a) **Requisite features of State plan.** In order for the State to be eligible for payments under this part, it shall have a plan approved by the Secretary which ... (15) effective October 1, 1983, provides that, in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home....

foster families to accept children whose problems do not always match the families' strengths, and bad placements and overuse of existing homes lead to burnout among foster parents.[2]

Was an effort made to keep the children in their home? The State did file a case permanency plan listing preventative services. Other than financial services, including aid to dependent families, no services were offered or attempted to be offered prior to this removal. Service that would have been available included budgeting, meal preparation, child care, hygiene and housekeeping care. The mother also needed transportation, particularly for medical purposes. The State argues these services were not offered because these services had been offered to the family after a prior adjudication but did not work. This is an argument we cannot accept because the prior child in need of assistance case was dismissed and the children who had been placed in foster care were returned home. Additionally, the department's own case permanency plan indicates protective supervision and case management were discontinued February 1981 and November 1986 because a minimal level of care was reached.

We find there was a showing here the family needed housekeeping, additional clothing and laundry services, and trans-

portation for medical care. Generally, these services can be provided while leaving the children in the home. We find the issue of services available and necessary to allow the children to remain in their home was not addressed prior to determining the children should be placed in foster care. It is necessary this issue be addressed prior to the court ordering a foster placement. *See* § 232.102(4); *see also* 42 U.S.C. § 671(a)(15). We therefore reverse the order for foster placement but order the children remain in foster care for sixty days following the date of the filing of this order. During the sixty-day period the State shall petition the court to continue the placement or to release the children to their parents and to order such services as are deemed necessary to be provided. The trial court shall not continue the placement without determining reasonable efforts have been made to eliminate the need for foster care.

CHINA ADJUDICATION AFFIRMED; REMANDED WITH INSTRUCTIONS.

---

2.   *See* Wiley, *Iowa in Midst of a Shortage of Foster Care,* Des Moines Register, April 10, 1989.