**IN THE COURT OF APPEALS OF IOWA**

No. 14-0146
Filed June 11, 2014

**IN THE INTEREST OF W.E.,**
    **Minor Child,**

**O.M., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Sylvia A. Lewis,

Judge.

A father appeals the order terminating his parental rights.  **AFFIRMED.**

John Bishop, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, Janet M. Lyness, County Attorney, and Emily A. Voss,

Assistant County Attorney, for appellee.

Lynn M. Rose of Mears Law Firm, Iowa City, for mother.

Joseph C. Pavelich of Mellon & Spies, Iowa City, attorney and guardian ad

litem for minor child.

Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

Ollie appeals an order terminating his parental rights pursuant to Iowa Code section 232.116(1)(h) (2013). Ollie contends the State failed to establish it undertook reasonable efforts as part of its ultimate proof the child, W.E., could not safely be returned to the Ollie's care. We affirm the judgment of the juvenile court.

I.

This family first came to the attention of the Iowa Department of Human Services (hereinafter "IDHS") in November 2012 when W.E.'s meconium screen tested positive for opiates. Upon inquiry, the mother's medical providers informed IDHS the mother treated at an emergency room for morphine withdrawal after illegally using another's prescription only four weeks prior to delivery of the child. The mother's medical providers also informed IDHS there was no medically justifiable reason for a positive screen. IDHS obtained an ex parte removal order based on the positive meconium screen and risk of parental flight.

When IDHS and law enforcement went to the mother's residence to remove the child, Ollie and the child were at the residence but the mother was absent. Ollie was staying with the mother, but the two were not and are not married. Ollie denied IDHS and the police entry into the residence. After some time, the mother arrived at the residence and permitted entry. The police determined Ollie was in the residence and in the presence of the mother in violation of a no contact order issued on July 1, 2012, arising out of a criminal

proceeding in which Ollie was charged with domestic abuse assault, third offense, for assaulting the mother and threatening her life and the then unborn child W.E. It was alleged in the criminal proceeding that Ollie threatened to "kick the baby out" of the mother's stomach. Although Ollie was staying at the residence with the mother's consent, and although the mother was trying to have the no contact order cancelled, the police arrested Ollie for violating the no contact order. He remained in custody during the pendency of most of this proceeding. The child, then aged sixteen days, was removed from the home and placed in foster care under the custody of IDHS.

Subsequently, the police executed a search warrant of the residence and seized five bags of heroin. The mother denied any knowledge of the heroin. Ollie reported to IDHS that he and the mother were using heroin daily in the residence before and after the child was born.

The State filed its petition for child in need of assistance on November 30, 2012. On December 17, 2012, the child was adjudicated in need of assistance with respect to the mother. The court found that the child could not remain in the parental home and that reasonable efforts had been made to alleviate out-of-home placement. The adjudicatory order advised the parents to request additional services if they believed there were additional services not being provided that would assist them in achieving reunification with the child. On December 19, Ollie stipulated to the adjudication with respect to his rights.

On January 14, 2013, the matter came before the juvenile court for dispositional hearing. Ollie was present at the hearing with counsel. The court

found that the child could not remain in the parental home and that reasonable efforts had been made to alleviate out-of home placement. The parties agreed that custody of the child remain with IDHS for foster family care with the permanency goal of reuniting W.E. with the mother. The court found there were no requests for additional services at the time of the hearing. As in the adjudicatory order, the dispositional order advised the parents to request additional services if they believed there were additional services not being provided that would assist them in achieving reunification with the child.

On May 9, 2013, the court entered a permanency order extending the goal of family reunification for an additional six months. The court found compelling reasons not to proceed with termination at that time, including that the mother was an active participant in family treatment and making progress on her case plan. The court ordered that custody of the child remain with IDHS. The court found IDHS had made reasonable efforts to reunify the family during the review period and that no party had requested any additional services or assistance. Ollie was still in custody at the time of the permanency hearing and order.

On October 9, 2013, Ollie filed a request for additional services. In the request, Ollie stated he recently was released from jail. He requested, "at a minimum, fully supervised visits with his child." On November 7, 2013, the matter came before the juvenile court for a permanency hearing. At the hearing, the court considered Ollie's request for visitation. The court reminded Ollie that the court previously approved a case plan providing services and setting terms of visitation and that visitation was contingent upon Ollie's compliance with the

approved case plan.  Upon being advised of this by the juvenile court, Ollie stormed out of the hearing.  Ultimately, Ollie was able to commence visitation with W.E.  He exercised several supervised visits with the child.

Shortly after Ollie filed his request for additional services, on November 6, 2013, the State filed its petition to terminate parental rights.  The State sought termination of the parents' rights pursuant to Iowa Code section 232.116(1)(h) and (*l*).  Although the juvenile court's order does not cite the specific code provision, it is clear from the context the court granted the State's petition pursuant to paragraph (h).  The mother does not appeal the termination order.

II.

We review de novo proceedings terminating parental rights.  *See In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011).  We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented.  *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995).  We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them.  *See id.* at 480–81.  While giving weight to the findings of the juvenile court, our obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before.  We will thus uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination.  *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."  *Id.*

III.

Termination of parental rights under chapter 232 follows a three-step analysis.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  First, the court must determine if a ground for termination under section 232.116(1) has been established.  *See id.*  Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child.  *See id.*  Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights.  *See id.*

The district court terminated Ollie's parental rights pursuant to section 232.116(1)(h).  As relevant here, to establish this ground for termination, the State was required to prove by clear and convincing evidence that the child "cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."  Iowa Code § 232.116(1)(h)(4); *In re Chad*, 318 N.W.2d 213, 218 (Iowa 1982).  A child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or without remaining a child in need of assistance.  *See In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995); *see also In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "The threat of probable harm will justify termination, and the perceived harm

need not be the one that supported the child's initial removal from the home." *M.M.*, 483 N.W.2d at 814.

As part of its ultimate proof the child cannot be returned to the care of a parent, the State must establish it made reasonable efforts to return the child to the child's home as quickly as possible consistent with the best interests of the child. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "Although . . . a parent's imprisonment may create difficulties in providing reunification services, . . . imprisonment [does not] absolve the department of its statutory mandate to provide reunification services under all circumstances." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). "Instead, . . . the department must assess the nature of its reasonable efforts obligation based on the circumstances of each case." *Id.*

On appeal, Ollie argues the State did not establish that it made reasonable efforts to reunite him with W.E. If he would have been given more time following his release from jail to have more visitation, he argues, he would have been able to prove he is now a capable parent. Much of the delay in commencing visitation upon Ollie's release from jail was due to Ollie. The case plan required Ollie to meet with IDHS prior to commencing visitation, but he refused to do so. It was only after the hearing in which the court told Ollie he would have to comply with the case plan did Ollie agree to meet and start visitation. Even if the delay was caused by the State rather than Ollie, we conclude the visitation period was reasonable. In a very similar case, our court concluded that the provision of visitation services to a father upon release from

prison one month prior to a termination hearing was sufficient to justify the "department's decision to forgo further reunification services." *Id.* Of particular importance in that case was the fact that the father had been incarcerated all but four months of the child's life. Likewise, in this case, W.E. was removed from the family when the child was only sixteen days old. Ollie was arrested on that date and did not see the child until almost one year later at visitation. There is no evidence of any bond or relationship between Ollie and the child.

Ollie also argues he should have been provided more time because the evidence showed he "was turning his life around." There is evidence that Ollie was experiencing success while living at a shelter upon his release from jail. Ollie's limited, positive steps toward rehabilitation do not cure or eliminate his past conduct. *See id.* at 526 ("While a once unfit parent may not automatically be deemed unfit, a parent may not wipe the slate clean merely by professing a desire to do so. We have considered a parent's arrests and incarcerations in determining whether return of a child to a parent would result in harm."). Ollie has extensive criminal history in the State of Iowa. He has been convicted on multiple occasions for controlled substances offenses, including furnishing controlled substances to an inmate and numerous possession offenses. He has violent criminal history, including convictions for harassment, assault, aggravated assault while using or displaying a dangerous weapon, and domestic abuse assault. He has also been convicted of various property crimes, including theft and criminal mischief. Finally, he has violated the terms and conditions of his probation on at least four occasions and violated various no contact orders on at

least seven occasions. In addition to his Iowa criminal history, Ollie was incarcerated in Michigan following a conviction for armed robbery. In addition to his criminal history, Ollie has prior experience with IDHS. He has a founded child abuse report arising out of a domestic abuse incident occurring in the presence of children in a case not involving this mother and this child. The juvenile court summarized as follows:

> [Ollie] is a 55-year-old man with a criminal record that extends from adolescence throughout his adult life. His recent success at the Shelter House is of short duration and under a highly structured environment where his basic needs are met by the program. How he will fare once these needs are not met by the program is unknown, and if his past is an indicator, it is unlikely he will make a significant lifestyle change.

We agree and adopt these findings as our own.

Finally, although not dispositive of the issue, it should be noted IDHS provided significant services to the family—primarily the mother—to facilitate reunification. The services included: case management; foster care; visitation services; Family, Safety, Risk, and Permanency services; family team meetings; parenting education; referrals for mental health, substance abuse, and domestic violence; transitional housing; food stamps; transportation; and others. While the father was not able to use many of the services because he was in custody pending the resolution of the domestic violence charge, he was required to demand other, different, or additional services prior to a permanency or termination hearing that could have been provided to him. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). On multiple occasions the juvenile court made findings, however, that neither the mother nor Ollie requested other,

different, or additional services. It was only in October 2013 that Ollie requested supervised visitation. While those services may have been too little too late, it does not change the fact that Ollie had the obligation to demand other, different, or additional services and failed to do so. *See In re M.T.*, 613 N.W.2d 690, 692 (Iowa Ct. App. 2000) ("The only service DHS was able to offer [the father] during his incarceration was supervised visitation. [He] cannot fault DHS for being unable to provide him additional services when his own actions presented him from taking advantage of them.").

We conclude the State established it undertook reasonable efforts.

## IV.

After review of the record, we conclude the State established grounds for termination pursuant to Iowa Code section 232.116(1)(h), that termination of Ollie's parental rights was in the best interest of the child, and that no countervailing interest should serve to preclude termination.

**AFFIRMED.**