# IN THE COURT OF APPEALS OF IOWA

No. 14-1024
Filed August 27, 2014

**IN THE INTREST OF N.S.,**
    Minor Child,

**L.S., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Buena Vista County, Mary L. Timko, Associate Juvenile Judge.

Mother appeals from an order terminating her parental rights. **AFFIRMED.**

Lisa Mazurek, Cherokee, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Dave Patton, County Attorney, and Elizabeth D. LaPole, Assistant County Attorney, for appellee.

David A. Dawson, Sioux City, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

On June 6, 2014, the juvenile court entered an order terminating the parent-child relationship between Johnathan and Lisa and their child N.S. Only Lisa appeals the termination order. On appeal, Lisa contends there is not sufficient evidence supporting the termination of her parental rights. Lisa also contends the court should not have terminated her parental rights because two different family members were willing to provide for the child "by adoption or guardianship."

We review de novo proceedings terminating parental rights. *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See id.* at 480-81. Our obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will thus uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

Termination of parental rights under Iowa Code chapter 232 (2013) follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has

been established. *Id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *Id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights. *Id.*

The juvenile court terminated Lisa's parental rights pursuant to section 232.116(1)(h). As relevant here, to establish this ground for termination, the State was required to prove by clear and convincing evidence the child "cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h)(4); *see In re Chad*, 318 N.W.2d 213, 217 (Iowa 1982). A child cannot be returned to the custody of the child's parents under section 232.102 if by doing so the child would remain a child in need of assistance or would be exposed to any harm amounting to a new child in need of assistance adjudication. *See In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995), *overruled on other grounds by P.L.*, 778 N.W.2d at 39; *see also In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) ("The threat of probable harm will justify termination, and the perceived harm need not be the one that supported the child's initial removal from the home."). We conclude the State proved this ground by clear and convincing evidence and termination of Lisa's parental rights is in the best interests of N.S.

The family first came to the attention of the Iowa Department of Human Services (hereinafter IDHS) several months after N.S.'s birth in 2012. At that

time, Lisa was no longer in a relationship with Johnathan, N.S.'s father. IDHS was notified Lisa was engaged to and living with Tony, a career criminal and registered sex offender recently released from prison. Lisa was then arrested and charged with child endangerment. Investigation revealed Lisa was aware of Tony's status as a registered sex offender but thought his sex offender status would not matter once they were married. Upon being released from jail and being confronted with the choice of living with N.S. or with Tony, Lisa agreed to have N.S. placed with Lisa's mother, Judy, so Lisa could continue to live with Tony.

Initially, while N.S. was out of Lisa's custody, Lisa did little to work toward reunification with N.S. and continued to place her desire to date Tony over her relationship with N.S. Lisa did little to care for N.S. and little to create any bond with N.S. Lisa had the right to supervised visitation with N.S., but she did not often exercise that right. Judy explained when Lisa did exercise visitation, the visitation typically lasted only fifteen minutes. The visits were short because Tony texted and called Lisa during the visit and Lisa would leave in response.

Judy's care of N.S. abruptly ended in July 2013 when IDHS learned Judy left the area with a man she had known for only a week and left N.S. with Judy's sister, Michelle. IDHS was concerned that Judy demonstrated the same poor decision-making skills as Lisa with respect to choosing male partners. IDHS decided placement of N.S. with Judy was no longer viable. Although IDHS preferred relative placement, all options were unsuccessful and N.S. was placed in foster care. It was at this time N.S. was adjudicated in need of assistance.

Despite the receipt of numerous services, Lisa was unable to progress to a point where she could resume care of N.S. without exposing N.S. to the risk of adjudicatory harm. Lisa has been diagnosed with Intellectual Disability (formerly Mild Mental Retardation) and Adjustment Disorder. While lower mental functioning alone is not sufficient grounds for termination, it is a relevant consideration where it affects the child's well being. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). Lisa is unable to control her impulses with respect to choosing partners, and Lisa chooses partners that create a risk of harm to N.S. IDHS learned Lisa began a romantic relationship with another man after her relationship with Tony ended. This second man also posed a risk of harm to N.S. When asked about the relationship, Lisa misrepresented to IDHS and the juvenile court the second relationship had ended.

Lisa has difficulty controlling her emotions and frequently is in conflict with others. She has been diagnosed with Generalized Anxiety Disorder, Major Depressive Disorder, ADHD, and Histrionic personality traits. During the time N.S. was removed from her care, Lisa had conflicts with her neighbors. She had conflicts with her friends and family. The social worker assigned to the case testified that these recurring conflicts created a risk of harm to N.S. because N.S. was present during some of the conflicts. In addition, the general chaotic environment was not good for N.S.'s development.

Lisa is also unable to manage her financial affairs or control her impulses with respect to spending money. Lisa's Social Security Disability Insurance benefits are managed by a designated payee. The money Lisa earns from

employment is compulsively spent or gambled away. IDHS provided services to Lisa to assist her in managing her money, but those services were not successful. The social worker assigned to the case testified Lisa is barely able to provide for herself let alone N.S. While termination cannot be based on economic factors alone, we find those factors are relevant to the extent they reflect on Lisa's decision making process, or lack thereof. *See id.* IDHS concluded there are no additional services that could be offered to address Lisa's needs to allow reunification without exposing N.S. to adjudicatory harm.

The goal of assistance proceedings "is to improve parenting skills and maintain the parent-child relationship." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). That being said, as a general rule, courts do not gamble with a child's future by asking the child to wait indefinitely for stable biological parenting. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Lisa has had ample opportunity to avail herself of IDHS services and work toward reunification with N.S. N.S. need not wait for Lisa to become a responsible parent. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable."). Given the foregoing, we conclude the termination of Lisa's parental rights is in the best interests of the child.

We also conclude there are no statutory grounds why termination should not proceed. Lisa argues that N.S. can be placed with one of two relatives under a guardianship. This argument was not presented to the district court, and it is not preserved for our review. *See In re A.U.*, No. 13-0599, 2013 WL 2646971, at

*3 (Iowa Ct. App. Jun. 12, 2013) ("The mother acknowledges that the juvenile court did not rule upon issues of guardianship and additional time. As the mother did not subsequently request such a ruling, she has not preserved error for appellate review."). To the extent Lisa is arguing the permissive exception set forth in Iowa Code section 232.116(3)(a) applies, her argument fails. That section applies only where a "relative has legal custody of the child." Iowa Code § 232.116(3)(a). Here, IDHS has legal custody of the child.

**AFFIRMED.**