In the Interest of S.V., A Child, E.V.P., Mother, Appellant.

No. 85-65.

Court of Appeals of Iowa.

Aug. 27, 1986.

Susan Nagl, of Bergan, Nagl & Weyer, Iowa City, for the appellant mother.

Thomas J. Miller, Atty. Gen., Charles K. Phillips, Asst. Atty. Gen., and Brent D. Heeren, Tama Co. Atty., for the appellee State.

Kenneth R. Martens, Marengo, for the natural father.

Considered by OXBERGER, C.J., and SNELL, and SACKETT, JJ.

SACKETT, Judge.

E.V.P., the natural mother of a six-year-old child, appeals from a juvenile court order placing the child with her natural father, J.V., and her paternal grandparents. The mother contends the evidence does not support the juvenile court's conclusion the home of the father and his parents is more conducive to S.V.'s welfare than the mother's home. She also asserts the juvenile court disregarded evidence her parenting skills had improved and did not fully consider substantiated reports that the father had sexually abused his stepchildren. The mother further contends S.V.'s placement with the father is actually placement with the paternal grandparents because they will have primary caretaking responsibility for S.V. and therefore amounts to an impermissible modification of the dispositional order.

This case involves the difficult question of the appropriate placement of S.V., who was born in July, 1980. At the age of five months S.V. was placed in foster care and was adjudicated a Child in Need of Assistance pursuant to Iowa Code § 232.2(6)(c)(2) (1985) on April 8, 1981. At the time the child neglect petition was filed, S.V. was living in the home of her natural parents, together with the mother's three other children, B.C., Ka.C. and Ke.C. All four chil-

dren were placed in foster care at that time.

The father and mother exercised visitation rights with the children while they were in foster care, however, neither parent had a consistent visitation record throughout that time. S.V.'s paternal grandmother, who was permitted visitation, had the best record of keeping weekly visitation schedules.

On January 20, 1982, the juvenile court entered an order restricting the parents' visitation rights. The order restricted the mother to supervised visitation at the foster home. The court ordered the father's visitation rights cease unless he made further application for review of visitation because of allegations made by his stepchildren, B.C. and Ka.C., that he had sexually abused them.

The allegations were investigated by a department socialworker who interviewed the two children and the mother. The socialworker's report concerned an incident involving both children during an unsupervised visit when the mother left the children with the stepfather while she was at work. The prohibition on the father's visitation was later modified to permit the father to have supervised visitation including supervised visitation with S.V. in his mother's home.

In spring, 1982, the mother and father separated permanently and this marriage was later dissolved. After the dissolution, the father moved into the home of his parents, G.V. and A.V. The mother resided with T.H. and later with R.P., to whom she is currently married.

By August, 1983, the department determined the mother's parenting skills had improved sufficiently and she had responded to a department case plan to the extent that B.C. and Ka.C. were returned to her home for trial placement. Ke.C. was placed into custody of her natural father.

Following the children's return to the mother's home, all three began family therapy sessions. The children currently live in their mother's home together with R.P., who has worked toward coparenting with the mother.

In a progress report dated May 2, 1984, Brenda Tesar, a department social-worker, recommended S.V. be placed in the mother's home and the mother be given permanent custody. On May 20, 1984, a review hearing was held. The juvenile court determined S.V. should remain in foster care subject to increased visitations in the mother's and father's homes.

In a progress report dated September 30, 1984, Tesar recommended S.V. be placed in custody of either the mother's or father's family as soon as possible. Tesar stated the following in the progress report:

Both family units have demonstrated the ability to effectively parent this child and provide a home environment which will meet [S.V.'s] critical care needs.

On October 3, 1984, the juvenile court ordered the department to recommend whether S.V. should be placed in her mother's or father's home. Pursuant to the order Tesar recommended S.V. be placed in her father's and grandparents' home. At a review hearing in November, 1984, Tesar again recommended placement with S.V.'s father and grandparents. Family therapist Cynthia Willis, foster parent Ladonna Zhorne and guardian ad litem Don Juhl also recommended S.V. be placed with her father and grandparents.

On December 19, 1984, the juvenile court ordered that custody of S.V. remain with the department. The juvenile court also granted trial home placement with S.V.'s father and grandparents, including provisions for visitation with S.V.'s mother. The mother appeals this dispositional order.

## I.

■ Appellate review of an order entered after a review hearing in a CHINA proceeding is de novo. *In the Interest of Blackledge*, 304 N.W.2d 209, 210 (Iowa 1981). While we give weight to the juvenile court's findings of fact because the juvenile court has had the unique opportunity to hear and observe the witnesses firsthand, we are not bound by them.

Iowa R..App.P. 14(f)(7); *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). Precedent is of little value in deciding this issue and each case must ultimately turn on its own particular facts. *In the Interest of Leehey*, 317 N.W.2d 513, 516 (Iowa App. 1982).

## II.

■ In child custody cases the first and governing concern of the courts is the best interests of the child. Iowa R.App.P. 14(f)(15); *In the Interest of J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984). "One rule which does especially bear on the determination . . . in child custody cases recognizes a child needs a stable and continuing environment." *In the Interest of Leehey*, 317 N.W.2d at 516 (quoting *In re Marriage of Carrico*, 284 N.W.2d 251, 254 (Iowa 1979)). The best interests of the child are presumed served by placement with a natural parent whenever possible. *In the Interest of J.R.H.*, 358 N.W.2d at 320; *In the Interest of Chad*, 318 N.W.2d 213, 218 (Iowa 1982).

**A.** The mother first contends S.V.'s placement with her father and grandparents amounts to modification of the dispositional order which is not permitted under Iowa Code § 232.102(7) (1985). Section 232.102(7) provides:

The duration of any placement made after an order pursuant to this section shall be for an initial period of six months. *At the expiration of that period and every six months thereafter, the court shall hold a hearing and review the placement in order to determine whether the child should be returned home, an extension of the placement should be made, or a termination of the parent-child relationship proceeding should be instituted.* The placement · shall be terminated and the child returned to the child's home if the court finds by a preponderance of the evidence that the child will not suffer harm in the manner specified in section 232.2, subsection 6. If the placement is extended, the court shall determine whether additional services are necessary to facilitate the return of the child to the child's home, and if the court determines such services are needed, the court shall order the provision of such services. When the child is not returned to the child's home and if the child has been previously placed in a licensed foster care facility, the department or agency responsible for the placement of the child shall consider placing the child in the same licensed foster care facility. (emphasis added).

The mother argues the juvenile court had only three alternatives after the November, 1984 review rehearing:

1. Return S.V. home;

2. Extend S.V.'s current foster care placement; or

3. Initiate a termination of the parent-child relationship.

*See In the Interest of Blackledge*, 304 N.W.2d 209, 213 (Iowa 1981). However, since grandmother G.V. testified she would assume primary care if S.V. was placed with her father and grandparents, the mother argues that in actuality S.V. is being placed with G.V. rather than the father. The mother argues placement with grandparents is not an alternative available to the juvenile court under § 232.102(7). In addition, the mother asserts S.V.'s placement with G.V. violates the "rebuttable presumption that the best interests of the child are served by custody of the natural parents." *In the Interest of Chad*, 318 N.W.2d 213, 218 (Iowa 1982).

■ The mother is correct that § 232.-102(7) limits the juvenile court's alternatives to home placement, extension on foster care placement or termination proceedings. However, the mother is not correct in saying S.V.'s placement with her father and grandparents does not amount to returning the child home. The decree dissolving the natural parents' marriage did not award custody of S.V. to either parent because legal custody of S.V. had been transferred to the department prior to the dissolution. As a result, S.V. had two homes to which she could be returned after the review hearing.

The mother also contends the instant case comes within the holding of *In the Interest of Blackledge*, 304 N.W.2d 209 (Iowa 1981). We find the instant case is distinguishable.

In *Blackledge*, the court held the juvenile court had erred in comparing the natural mother's home to the natural father's home in determining the best interests of the children required transferring legal custody and placement to the father. *Blackledge*, 304 N.W.2d at 214–15. There, the parents had been divorced prior to the CHINA proceeding and the mother had been awarded custody of the children. The court found that since the father's home was a foster home pursuant to the CHINA proceedings, such comparison of a foster home to the mother's was inappropriate in determining the children's best interest.

In the instant case, however, we find it was appropriate for the juvenile court to compare the mother's and father's home in determining placement of S.V. By virtue of the fact S.V. has two homes, the placement decision required that the juvenile court look at both homes to determine which would better serve S.V.'s interests.

■ We also find it was appropriate for the juvenile court to consider the entire family unit of each home in determining S.V.'s placement. Just as the juvenile court considered the S.V.'s relationship with her half-siblings and stepfather R.P.'s active coparenting, so too the juvenile court had the duty to consider the family environment if S.V. were placed with her father and his parents.

■ We find the father did not give up his right to seek placement of S.V. in his home simply because his family unit included his parents. Since the father was a member of his parents' household, we determine S.V.'s placement there still constituted returning home within the meaning of § 232.102(7). Only if the father did not reside with his parents would S.V.'s placement there have been an impermissible modification of the dispositional order.

■ **B.** The mother contends there was not substantial evidence to prove S.V.'s placement in the home of her father and grandparents was more conducive to S.V.'s best interest than placement in the mother's home. Placement with the father's family was recommended by department socialworker Brenda Tesar, family therapist Cynthia Willis, guardian ad litem Don Juhl and foster parent Ladonna Zhorne. Their testimony identified the following factors which support S.V.'s placement with her father and grandparents:

1. S.V.'s quality of life will be better in her father's and grandparents' home.

2. The transition from the foster home to the V. home would be smoother since that home most closely approximates the foster home.

3. S.V. will have her own room and personal space at the V. home.

4. S.V. will have more individualized attention in her father's and grandparents' home since the grandmother said she would quit her job to care for S.V.

5. S.V. would face sibling rivalry in the mother's home.

6. The mother's home would face additional interfamily and financial stress if S.V. were placed there.

7. S.V. has a special bonding with her grandmother because G.V. has the best record of maintaining visitation with S.V. while she was in foster care.

8. G.V. is a more emotionally mature and stable person.

9. G.V. can provide S.V. with more needed stimulation in the form of developmental games and activities plus family activities.

10. A.V. and G.V. have made long-range financial care plans for S.V.

11. The grandparent's farm will provide a healthy child rearing environment.

12. The mother would have great difficulty parenting and handling three children rather than two children.

Viewing the record in its totality we find it supports placement of S.V. with her father and grandparents to be in the best interest of the child.

■ C. The mother next argues placing S.V. with her father and grandparents would separate S.V. from her half-brother and half-sister. In *In re Marriage of Wahl*, 246 N.W.2d 268, 270 (Iowa 1976), the court stated:

Split custody deprives children of the benefit of constant association with each other. As the innocent victims of marital bankruptcy, they should not be denied the benefit except when their best interest require it.

In the instant case, S.V. was removed from her mother's home at the age of five months and had not developed a relationship with B.C. and Ka.C. at that time. The relationship which S.V. has developed with B.C. and Ka.C. is one of limited contact. Department evaluations do conclude S.V. generally interacts well with B.C. and Ka.C. However, the reports also note problems with sibling rivalry which Tesar and Willis testified would likely intensify if S.V. were placed with the mother. We find the presumption for keeping siblings together is not very strong in this case and is outweighed by other considerations pointing to placement with S.V.'s father and grandparents as being in the best interest of the child.

■ D. The mother finally contends the juvenile court did not properly consider or give sufficient weight to the substantiated sexual abuse report filed against the father in determining S.V.'s placement. We do agree with the mother that allegations of sexual abuse must be given serious consideration. At the same time we are convinced by subsequent reports that the risk of future abuse by the father is minimal and agree with the trial court that no danger is posed by placing S.V. in the home of her father and grandparents.

We find there are some conflicting issues involved in the sexual abuse report. The mother did not immediately order the father out of the home after she learned of her children's allegations. Later, she also told the investigating socialworker she was not lending any credibility to her children's allegations. The socialworker concluded the mother believed her children had fabricated their stories. In addition, the mother took the father back, thus indicating she did not believe the situation to be serious. Moreover, the father adamantly denied the allegations. He told mental health director John Daniel that one week prior to the childrens' allegations, Ka.C. had told him and her mother that her foster care father had been kissing and touching her.

After the report was filed the juvenile court restricted the father's visitation rights and ordered the father submit to psychological treatment before it would restore unsupervised visitation rights. The father did undergo psychological testing. Mental health director John Daniel reported he had the impression the father was sincere in denying the sexual abuse charge. He confirmed the father had no other history of legal problems in this area. After evaluating the father, Dr. Jerry Lewis, a psychiatrist, concluded the father did not have any psychiatric illness and stated no recommendations for further treatment were needed. Thereafter, the father's visitation rights were restored.

The department was reasonably convinced that S.V. was in no danger of being sexually abused if placed in her father's and grandparent's home. Prior to trial placement in the father's home, the department permitted the father to have supervised visitation with S.V. in his parents' home. G.V. was designated as the adult to supervise these in-home visitations. It is clear the department had no fear sexual abuse would occur during the supervised visits in the father's home or the father's in-home visitation rights would not have been restored.

The trial placement conditions are no different from the supervised visitation condi-

tions. Under the court ordered trial placement G.V. is assuming primary care of S.V. As primary caretaker G.V. will be able to supervise S.V.'s interaction with her father just as she did during S.V.'s visitation with the father.

In addition, the witnesses who recommended S.V.'s placement with her father and grandparents also concluded the risk of future sexual abuse was very minimal. Family therapist Willis testified at the review hearing the risk of future sexual abuse was so small that it was not worth considering in determining S.V.'s placement. Tesar also recommended S.V.'s placement with her father and grandparents, viewing any risk of sexual abuse to be very minimal. Juhl, the guardian ad litem, testified he was skeptical about the validity of the department "substantiated" sexual abuse report and stated he simply had no concerns about sexual abuse in the father's home.

Thus, it may be said the juvenile court was presented the testimony of four neutral witnesses who were personally involved in this case: the department socialworker, the family therapist, mental health director and the guardian ad litem. All four of these witnesses were experts with personal knowledge who came to the conclusion based on their observations, investigations, experience and training that there was no discernible risk of the father committing sexual abuse in the future. The juvenile court, sitting in its unique position to hear and observe the witnesses, determined upon consideration of all the evidence that the risk of future sexual abuse was negligible and it would be in S.V.'s best interest that she be placed in her father's and grandparents' home. We agree with the juvenile court that based on the record as a whole, the father's home poses no danger to S.V. of sexual abuse.

We therefore affirm the juvenile court's dispositional order placing S.V. in the home of her father and grandparents. AFFIRMED.