# IN THE COURT OF APPEALS OF IOWA

No. 14-1465
Filed November 26, 2014

**IN THE INTEREST OF B.N.,**
    **Minor Child,**

**S.N., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

The father and the child's guardian ad litem appeal from the permanency order placing the child with the child's mother. **REVERSED AND REMANDED.**

Patrick C. Peters of Payer, Hunziker, Rhodes & Peters, L.L.P., Ames, for appellant father.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Stephen Holmes, County Attorney, and Jesse Ramirez, Assistant County Attorney, for appellee.

Matthew Mauk, Ames, for mother.

Shannon M. Leighty, Assistant Public Defender, attorney and guardian ad litem for appellant minor child.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

The father, Shane, and the guardian ad litem appeal from the permanency order placing Shane's child, B.N., in the care of Abbey, the child's mother, under the protective supervision of the Iowa Department of Human Services (hereinafter "IDHS"). They contend the court erred (1) in finding the child's "home," within the meaning of Iowa Code section 232.104(2)(a), was Abbey's residence, and (2) in finding the child could not be returned to Shane's residence.

I.

B.N. was born in 2007 to Shane and Abbey, who were not married. In November 2007, a consent decree was entered providing for joint legal and physical custody of the child. Although the decree provided for joint physical custody of B.N., Abbey had almost no contact with the child, and Shane assumed the role of primary physical custodian. From the time of the child's birth both parents struggled with substance abuse issues.

In May 2013, the family came to the attention of IDHS after Shane assaulted his mother, with whom he and B.N. were living. An investigation led to the filing of a child-in-need-of-assistance (CINA) petition in August. On September 17, at the request of IDHS prior to any court-ordered placement, Shane placed the child with Abbey, who was then residing in a residential substance abuse facility. On September 25, the court entered a stipulated adjudication order adjudicating B.N. in need of assistance under Iowa Code section 232.2(6)(c)(2) (2013). "Pending the dispositional hearing, [the court ordered that] the custody of the child in interest shall remain with the child mother

under the protective supervision" of the department.[1] The November 6 dispositional order placed the child in his mother's custody under the supervision of IDHS. The April 3, 2014 dispositional review order provided that custody remain with the mother under IDHS supervision.

In May 2014, Abbey completed residential substance abuse treatment, and she and B.N. moved in with Abbey's mother, B.N.'s maternal grandmother. In June 2014, Shane completed substance abuse treatment. On August 5, Shane moved to modify placement of B.N., seeking the return of B.N. to his care and custody. Shane also filed a motion to compel visitation. Abbey filed a motion for concurrent jurisdiction.

On August 15, the court held a permanency hearing at which it also considered the parties' respective motions. The State advocated for continued placement with Abbey for a time and for Shane "to have a little bit more time transitioning [the child] into his life." Shane argued it was in the child's best interest to return the child to him now rather than have the child start school and then move during the school year. Abbey argued the court should "set the case for further review, and leave . . . the custody situation intact," with the possibility

---

[1] The procedural posture of this case becomes somewhat muddied after adjudication but prior to disposition. The State applied for temporary removal of B.N. from Shane's custody on October 24, 2013. The court issued a temporary removal order finding, in part, "the child cannot either be returned to the place where the child was residing or placed with the parent who does not have physical care of the child." The temporary removal order removed B.N. from Shane's custody for placement "in the home of a relative," and ordered that a CINA petition be filed within three days, if not already on file, "unless the child is sooner returned to the custody of the child's parents." However, B.N. already was with Abbey at the time of the temporary removal order. In an order dated October 30, the court noted the application for temporary removal was moot, the State had requested the application be withdrawn, and all parties were in agreement. The court ordered the application "withdrawn and held for naught," but the court did not address the temporary removal order previously filed.

of transitioning the child back to Shane around the Christmas holiday. In the report to the court, IDHS stated the goal was to return B.N. to Shane "as that is where he was when [I]DHS began the interaction with this family." The guardian ad litem argued the child's best interest would be served by placing the child with the father now so the child could start "in a stable environment, being able to start school, [and] start with a therapist."

In its permanency order, the court found Shane and Abbey "in remarkably similar postures to one another." They both had completed substance abuse treatment, obtained employment, and engaged in aftercare services. The court noted:

> The point of these permanency proceedings in not the custody of the child, but whether the child can be returned home. The Court believes that the child can be returned home. *The real issue is what constitutes the child's "home" under these unique and particular circumstances.*
> The parties are both the legal and custodial parents. They were never married. The current district court decree provides for equal physical and legal custody between the parents. However, [the mother] resides in West Des Moines, Iowa, while [the father] resides near Cedar Rapids.

(Emphasis added.) In determining "what constitutes the child's 'home,'" the court "review[ed] the matter in terms of what the child considers to be his home." The court concluded:

> The child's home is also legally described in Iowa law. The child's home is the home of his custodial parent. In this case the child's home is the home of his mother when considering the legal and factual picture painted by the circumstances of this case.

"[P]ursuant to Iowa Code section 232.104(2)(a), the court order[ed] the child to be returned home, which is the home of the child's mother" and provided for visitation by the father. The court granted the mother's motion for concurrent

jurisdiction "to allow the parties to litigate the issues of custody, visitation, and support." The court denied the father's motion for modification of placement. Shane filed this appeal.

## II.

The father and guardian ad litem contend the court erred (1) in finding the child's "home" was Abbey's residence, and (2) in finding the child could not be returned to Shane's residence. The State filed a statement to the court, noting that the juvenile court rejected IDHS's recommendation in its permanency order, that the State did not file a notice of appeal, and that the State makes no argument on appeal. Thus, no party advocates affirming the juvenile court's permanency order. Appellate review of CINA proceedings is de novo. *See In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014); *In re A.T.*, 799 N.W.2d 148, 150 (Iowa Ct. App. 2011) (stating review of permanency orders is de novo). We give weight to the findings of the juvenile court, but we are not bound by them. *See J.S.*, 846 N.W.2d at 40. Our primary concern is the best interests of the child. *See id.* To the extent the juvenile court's ruling involves statutory interpretation, we review the decision for correction of errors at law. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010); *see In re N.V.*, 744 N.W.2d 634, 636 (Iowa 2008).

## III.

## A.

CINA proceedings are creatures of statute. We thus begin our analysis by examining the statutory text. The relevant statute sets forth four outcomes following a permanency hearing. The court may:

1. Return the child to the child's home;
2. Continue placement for an additional six months;
3. Direct the county attorney or the attorney for the child to pursue termination of parental rights; or
4. Enter an order placing custody with a suitable person for guardianship, long-term care, or another permanent living arrangement for the child.

Iowa Code § 232.104(2). The first choice, returning the child home, is the preferred outcome. *See In re A.T.*, 799 N.W.2d 148, 151 n.6 (Iowa Ct. App. 2011). In this case, the court ordered the child to be returned "home," which the court interpreted to be Abbey's residence. Under the facts and circumstances of this case, we conclude that was error.

Relevant statutory text supports the conclusion the child's "home" is the home from which he was removed. Iowa Code sections 232.95(2) and 232.96(10) provide the "child's home" is the home in which the child resided at the time or removal. Section 232.104(2)(a) provides that the court shall "return" the child to the child's home. From this we can infer that the child had to be removed from the "home" to be "returned" to the "home." Here, the removal order removed B.N. from Shane's home. The fact that B.N. was temporarily residing with Abbey while Shane completed treatment does not change our conclusion. Shane consented to the placement at the request of IDHS. Further, the temporary removal order identified Shane's residence as the child's "home."

The circumstances before us differ from those in *In re S.V.*, 395 N.W.2d 666, 669 (Iowa Ct. App. 1986), where the child was removed from the family home, the parents then divorced, and the district court did not provide for custody in the dissolution decree because the legal custody of the child had been transferred to IDHS when the child was removed. In that case, our court

determined that, "as a result" of the dissolution decree not awarding custody to either parent, "S.V. had two homes to which she could be returned after the review hearing." *S.V.*, 395 N.W.2d at 669. In this case, the child was not in the care of both parents. Although the consent decree provided for joint physical care, Shane had assumed the role of primary physical custodian in the mother's absence. The child was legally removed from Shane's home only. The conclusion in *S.V.* that the child had two homes to which she could be returned does not apply here.

Based on our conclusion that Iowa Code section 232.104(2)(a) authorizes only the return of the child to the home from which the child was legally removed, the court erred in entering a permanency order pursuant to that particular section "returning" the child to the mother's home, as that was not an option available to the court. *Cf.* Iowa Code § 232.102(7) (providing, when the court transfers custody of a child to a parent who does not have physical custody, the court may direct IDHS to provide services to the other parent "in order to enable them to resume custody of the child"). Accordingly, we reverse the permanency order placing the child with the mother pursuant to section 232.104(2)(a).

B.

The father and guardian ad litem also contend the court erred in not returning the child to the father. As noted above, IDHS recommended continuing the child's placement with the mother pending further review, with a goal of returning the child to the father in a short time. The original case worker noted visitation had gone very well. She thought three or four successful weekend

visits were necessary before she would recommend reunification. The current case worker testified the visits went very well. He did not have any safety concerns with the father. The mother testified she thought the father needed a little bit more time before the child became a big part of his life. She also testified she would not object to returning the child to the father in a month or two if IDHS determined that was appropriate. The court noted the guardian ad litem indicated the father's home was safe. Based on the foregoing, we conclude the court improperly did not order the child returned to the father.

IV.

Having reversed the permanency order "returning" the child to the mother's home, and having concluded the court improperly did not order the child returned to the father at that time, we remand for entry of an order consistent with this opinion.

**REVERSED AND REMANDED.**