**IN THE COURT OF APPEALS OF IOWA**

No. 19-1055
Filed November 6, 2019

**IN THE INTEREST OF A.B. and A.B.,**
**Minor Children,**

**A.B., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Appanoose County, William Owens,

Associate Juvenile Judge.

        A mother of two children appeals a permanency review order placing legal

custody of the children with their father.  **AFFIRMED.**

        Debra A. George of Griffing & George Law Firm, PLC, Centerville, for

appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Julie De Vries of De Vries Law Office, PLC, Centerville, attorney and

guardian ad litem for minor children.

        Considered by Bower, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, Judge.**

A mother of two children born in 2004 and 2007 appeals a permanency review order placing legal custody of the children with their father.

## I.  *Background Facts and Proceedings*

The department of human services first encountered the family in 2015, when the mother tested positive for methamphetamine.  The department referred the mother to a provider of community care services.

In 2017, the mother sought and obtained a domestic abuse protective order against the father.  The order, entered after a hearing at which the father and his attorney appeared, stated the father "committed a domestic abuse assault against [the mother]."  The district court granted the mother exclusive possession of the family residence and temporary custody of the children, subject to visitation with the father.[1]

A week after the domestic abuse protective order was filed, the department intervened for the second time based on concerns that the mother "had started using again," as well as concerns that she assaulted the children's father in the children's presence.  The mother admitted to methamphetamine use.  She agreed to a safety plan under which the children would stay with their adult sister.

The State filed a child-in-need-of-assistance petition.  The parents stipulated to the adjudication of the children as in need of assistance.  The juvenile court "removed" the children from their home and placed them in the "legal custody . . . [of] their father."  In a subsequent dispositional order, the court again "removed"

---

[1] The order was later modified to permit joint parental participation in department meetings and holiday visitation.

the children from the mother's home and reiterated that legal custody was placed with the father. Following a review hearing, the court retained the earlier disposition. The court also noted that the mother was incarcerated "on charges of stalking and violating a no-contact order."

Meanwhile, the father moved for concurrent jurisdiction to litigate custody in the district court. The juvenile court denied the motion after finding that the mother "seem[ed] to be making some progress." In a later review order, the court declined to address the father's renewed motion for concurrent jurisdiction. The court also noted that "[a] question arose regarding the appropriate permanency goal for the children," given that the domestic abuse protective order granted the mother "temporary legal custody of the children." The court concluded, "We are not yet at a permanency hearing." The court left legal custody of the children with the father.

Following a permanency hearing, the court again noted that the district court's protective order placed temporary custody of the children with the mother. The court explained that the order had expired and "[p]rior to that order being entered the children resided with the parents together in the same home."[2] The juvenile court elected to grant the father's motion for concurrent jurisdiction to litigate custody and visitation in the district court but barred the district court from entering "temporary orders on affidavits." Again, the court ordered legal custody of the children to remain with the father. The court granted the mother six additional months to work toward reunification.

---

[2] Although the civil domestic abuse protective order expired, the mother testified a criminal no-contact order was in effect based on the stalking offense and violation of a no-contact order.

The juvenile court filed a permanency review order before the six months expired. The court articulated the following framework for reviewing permanency:

> Iowa law requires the juvenile court to first consider whether returning a child to the custody of a parent is appropriate. If immediate return is not appropriate the juvenile court is then to consider whether granting additional time for a parent to work toward reunification is appropriate. If those options are not available the court must then consider whether it is in the best interests of a child to direct the county attorney to proceed with termination of parental rights. . . .

The court additionally noted if termination is not appropriate, it must consider what permanency order would be appropriate. The court concluded, "[I]t would not be appropriate to allow the children to return to [the mother's] custody pursuant to Iowa Code [s]ection 232.104(2)(a) [(2017)]." The court also declined to grant the mother additional time to facilitate reunification. Nonetheless, the court determined the evidence did not support termination. In the court's view, "The least restrictive alternative available[,] appropriate and in the best interests of the children [was] that their legal custody remain with father . . . pursuant to Iowa Code [s]ection 232.104(2)(d)(2)." The court granted the district court concurrent jurisdiction to address custody and visitation, without any limitation. This appeal followed.

## II.    *Analysis*

The mother contends (A) "the [juvenile] court erred in not returning the children to [her] care as there was no physical or adjudicatory harm preventing their return"; (B) "the [juvenile] court erred in [entering] a permanency order when the department [of human services] had not made reasonable efforts towards reunification as it failed to compel the children to individual counseling and family counseling with [her]"; and (C) "the department of human services did not [provide]

notice that the hearing could be a permanency decision, as the court had previously ruled that she had an additional six months."

Iowa Code section 232.104(2) affords the court several permanency options:

> After a permanency hearing the court shall do one of the following:
> a. Enter an order pursuant to section 232.102 to return the child to the child's home.
> b. Enter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.
> c. Direct the county attorney or the attorney for the child to institute proceedings to terminate the parent-child relationship.
> d. Enter an order, pursuant to findings required by subsection 4, to do one of the following:
> > (1) Transfer guardianship and custody of the child to a suitable person.
> > (2) Transfer sole custody of the child from one parent to another parent.
> > (3) Transfer custody of the child to a suitable person for the purpose of long-term care.
> > (4) If the child is sixteen years of age or older and the department has documented to the court's satisfaction a compelling reason for determining that an order under the other subparagraphs of this paragraph "d" would not be in the child's best interest, order another planned permanent living arrangement for the child.

As noted, the juvenile court ruled out return of the children to the mother under section 232.104(2)(a), the grant of additional time under section 232.104(2)(b), and an order to institute termination proceedings under section 232.104(2)(c). The court opted to "[t]ransfer sole custody of the child[ren] from one parent to another parent" pursuant to section 232.104(2)(d)(2).

The mother argues the court failed to "identif[y] an adjudicatory harm or imminent risk which required continued removal" from her home. We read the mother's argument as a challenge to the juvenile court's refusal to select the permanency option authorized by section 232.104(2)(a)—"return [of] the child[ren] to the child[ren's] home" pursuant to section 232.102.[3]

In rejecting this option, the juvenile court cited the department case manager's opinion that "we are really no closer to having [the children] returned to [the mother] now than we were when they were removed nearly eighteen months ago." The court found the "relationship with [the father,] and its impact on the girls[,] remain[ed] a concern." Specifically, the mother's "conflictual history with [the father] coupled with her on-going conduct in placing [the children] in the middle of that conflict threaten[ed] the girls' emotional well-being." The court determined the mother "created the circumstances that brought about the girls' removal, and she . . . simply failed to do enough to repair the damage that conduct caused."

Our de novo review of the record reveals that the mother remained sober for a year preceding the permanency hearing and made progress on other fronts. At the same time, the record supports the juvenile court's findings concerning the mother's fraught relationship with the father and the adverse effect of that relationship on the children. During in-chambers interviews, the eleven- and fourteen-year-old children described the emotional trauma they experienced as a

---

[3] Section 232.102(6)(a) reads: "Whenever possible the court should permit the child to remain at home with the child's parent, guardian, or custodian." Section 232.102(6)(a)(2) states:

> Custody of the child should not be transferred unless the court finds there is clear and convincing evidence that . . . [t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available.

result of the mother's conduct. The department case manager also testified to that harm as disclosed by the children's therapist.

In the face of this evidence of adjudicatory harm to the children, the mother falls back on an argument that the court was legally required to return the children to her home. She points to the district court's domestic abuse protective order granting her temporary custody of the children. The State counters that the children "clearly ha[d] two homes, one with their father and one with their mother," foreclosing the mother's argument that the court was required to return the children to her "home." While conceding that the district court granted the mother temporary custody of the children, the State argues "this brief temporary order . . . should not be held to sufficiently remov[e] [the father's] custodial rights such that the [children] are said to no longer have two homes." The argument on each side is a red herring.

On the mother's side, the temporary custody order does not alter the fact that she was found to have harmed the children, justifying their removal from her home. The temporary custody order also does not alter the fact that the harm continued, foreclosing return of the children to her home. *See* Iowa Code § 232.104(5) ("Any permanency order may provide restrictions upon the contact between the child and the child's parent or parents, consistent with the best interest of the child."); *In re A.F.*, No. 17-0919, 2017 WL 3525327, at *2 (Iowa Ct. App. Aug. 16, 2017) (rejecting argument that court was obligated to return the care arrangement to the de facto arrangement predating the child-in-need-of-assistance proceeding where that arrangement was not in the child's best interest).

On the State's side, resolution of this appeal does not turn on whether the father also had a "home" for the children at the time of removal. *Cf. In re C.W.*, No. 17-0506, 2017 WL 2684365, at *2 (Iowa Ct. App. June 21, 2017) (noting father "had custodial rights to the children" and "was on an equal footing with the mother in providing a home for the children"); *In re B.N.*, 14-1465, 2014 WL 6682454, at *1, *3 (Iowa Ct. App. Nov. 26, 2014) (holding that where parents had "joint legal and physical custody of the child," but father had assumed the role of physical caretaker in the mother's absence, "[r]elevant statutory text supports the conclusion the child's 'home' is the home from which [the child] was removed"); *In re A.T.*, 799 N.W.2d 148, 150–54 (Iowa Ct. App. 2011) (noting district court's dissolution decree granted father physical care of child and "once the district court fixed physical care as between the mother and the father, and the child was placed in the home of the physical caretaker, the State could not meet its burden to show the child 'cannot be returned to the child's home' as required by section 232.104(3)(c), because by the terms of the dissolution decree, [the child] was already 'home'"); *In re S.V.*, 395 N.W.2d 666, 669 (Iowa Ct. App. 1986) (stating where dissolution decree did not award custody of child to either parent but placed custody of child with the department and child was placed in the home of father and his parents, the child had both that home and mother's home to which she could be returned after the review hearing). Resolution of the appeal turns on whether the children could be "returned" to the mother's home. By virtue of the temporary custody order, her home was the children's legal home until otherwise ordered. It does not matter that the children's stay with the mother under the temporary custody order was brief. What matters is the existence of the custody

order in favor of the mother. The order cannot be collaterally attacked in this appeal. *See Sanford v. Manternach*, 601 N.W.2d 360, 363–64 (Iowa 1999) ("[T]he district court did enter a ruling and the State did not appeal that ruling. Thus, the defendants' argument in this case is actually a collateral attack on that prior judgment. . . . [A] judgment is not subject to collateral attack except on jurisdictional grounds.").

Having addressed what we perceive as a red herring, we turn to the juvenile court's actual disposition—transfer of the children's custody to the father pursuant to section 232.104(2)(d)(2). The statute contains several predicates to such a transfer:

> Prior to entering a permanency order pursuant to subsection 2, paragraph "d", convincing evidence must exist showing that all of the following apply:
> a. A termination of the parent-child relationship would not be in the best interest of the child.
> b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.
> c. The child cannot be returned to the child's home.

Iowa Code § 232.104(4). The juvenile court found that these predicates were met. Specifically, the court found transfer of legal custody to the father was "in the best interests of the children," services were offered to the family to correct the situation, including "FSRP services, mental health services, [and] substance abuse services," and, as noted, "the children could not be returned to the mother's home." *See id.* § 232.104(4)(a), (b), (c). Because the prerequisites for placing custody of the children with the father were satisfied, we affirm the juvenile court's permanency review order.

### III. *Reasonable Efforts*

The department has an obligation to make reasonable efforts toward reunification. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The mother argues the department failed to provide "individual therapy, parent-child therapy . . . and sufficient visitation to allow for healing of the relationship between mother and the girls." In fact, the department afforded the children and mother individual therapy. Although the children's sessions were not as frequent as the mother desired, we are not persuaded the department failed to fulfil its mandate on this front. As for parent-child therapy, the department's social work case manager acknowledged therapeutic interaction between the mother and children might benefit all three participants but stated the service was not provided because both girls were "adamant[ly] opposed." Finally, the mother conceded she was offered Wednesday and weekend visits with the children. Although she was not granted an extended holiday visit in late 2018 or an extended home visit as she desired, the amount of time she received was commensurate with the children's mental-health needs. In short, the department satisfied its reasonable-efforts mandate.

### IV. *Notice*

The mother argues the juvenile court granted the father custody without notice to her. In the context of that argument, the mother also asserts the court could not finalize transfer of custody to the father because she was afforded six additional months to reunify and that period had not elapsed when the court filed the permanency review order.

The State responds that the mother "[u]ndoubtedly . . . had sufficient notice the case was coming before the court for hearing and that the hearing would be

[a] permanency review hearing." The guardian ad litem asserts the department's concerns about the mother would not have been ameliorated "in a few short weeks."

With respect to the notice question, the juvenile court scheduled a permanency review hearing three months in advance of the hearing date. Two days before the scheduled hearing, the mother moved to modify the disposition. She also asked for a postponement of the hearing. It is clear from her motion and her request for a delay that she understood the import of the upcoming hearing.

We also are unpersuaded by the mother's focus on the juvenile court's failure to afford her the full six months to work toward reunification. The court explained that it had "already granted a six month continuance, and . . . little progress [was] made toward reunification." The court concluded, "There is simply no evidence that another thirty or sixty days would in any way move [the children] closer to reunification." The court's finding was supported by the record.

The mother's argument that the juvenile court could not act until the six-month period expired is also legally untenable. In *In re R.C.*, 523 N.W.2d 757, 760 (Iowa Ct. App. 1994), this court construed Iowa Code section 232.104(2)(b), which allows a court to continue placement of the child "for an additional six months." The court concluded, "[T]he court has jurisdiction to consider a petition to terminate parental rights during the six-month review period." *R.C.*, 523 N.W.2d at 760. The same is true here. We conclude the juvenile court did not act illegally by filing its permanency review order before the six-month reunification period expired.

We affirm the juvenile court's permanency review order in its entirety.

**AFFIRMED.**