**IN THE COURT OF APPEALS OF IOWA**

No. 25-1532
Filed December 17, 2025

**IN THE INTEREST OF A.H., B.H., B.H., B.H., E.H., and K.H.,**
**Minor Children,**

**C.H., Mother,**
    Appellant,

**R.H., Father,**
    Appellant.
_____

        Appeal from the Iowa District Court for Clayton County, Linnea M.N. Nicol,

Judge.


        A mother and father appeal a juvenile court's dispositional review order.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


        Stephanie R. Fueger of O'Connor & Thomas Law Firm, P.C., Dubuque, for

appellants mother and father.

        Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

        Gina L. Kramer of Kramer Law Office, PLLC, Dubuque, attorney and

guardian ad litem for minor children.


        Considered without oral argument by Badding, P.J., and Langholz and

Sandy, JJ.

**BADDING, Presiding Judge.**

The mother and father in this child welfare proceeding disciplined their six children by physically restraining them, restricting their food, and placing them in an isolation room in the basement of the family's home. The two oldest children—K.H., born in 2008; and E.H., born in 2009—were the main targets of this abuse. They were removed from their parents' custody and adjudicated as children in need of assistance.[1]

As the case progressed towards disposition, the Iowa Department of Health and Human Services suspended the parents' contact with K.H. and E.H. The parents responded by filing a motion for reasonable efforts that asked the juvenile court to remove the department's case manager and her supervisor and to order the department to create a plan for contact with the children. The court denied the motion, finding that it did not have authority to remove or assign staff from the department. The court also found that the department's suspension of contact between the parents and their children was not a denial of reasonable efforts toward reunification. On the parents' appeal from that order, although we do not reach the merits of the court's refusal to interfere with the department's staffing decisions, we reverse its reasonable-efforts ruling.

---

[1] The four youngest children, who are not the focus of this appeal, were also adjudicated but allowed to remain in the parents' custody. Although the juvenile court found an imminent risk to the children's life or health, there were no foster homes that could accommodate all of them. The court also noted that they were "visibly upset" and "traumatized by the request for removal" at the hearings where the issue was raised. So the court allowed them to remain with the parents under a safety plan that required other family members to move into the home to supervise the parents.

## I.      Background Facts and Prior Proceedings

This family most recently came to the department's attention in August 2024 on a report that the parents were physically abusing their two oldest children—then fifteen-year-old K.H. and his fourteen-year-old sister E.H. The reporter alleged that the parents left bruises on the children's arms, used physical restraints on them, and locked the children in a windowless basement room for hours without food, water, or bathroom access. These allegations were founded. During the department's investigation, both children were hospitalized for psychiatric treatment. K.H. was removed from the parents' custody in early October, and E.H. was removed a few weeks later. Once they were discharged from the hospital, the children were placed in shelter care and then with separate foster care families.

At the beginning of January 2025, after two days of a contested hearing, the parents stipulated to all six children's adjudication as children in need of assistance.[2] A few days after the stipulation was filed, the department's case manager reported to the court that K.H. and E.H.—who had been participating in weekly video calls with their parents—"recently expressed feeling comfortable resuming visits in a neutral, supervised setting." The parties and the children met the next day to create a family interaction plan. When the meeting ended, the parents believed that they would be receiving weekly in-person visits with K.H. and E.H. But just three days later, the department notified the parents that it was suspending all their contact with the children—including the supervised video calls.

---

[2] K.H. was adjudicated under Iowa Code section 232.96A(2) (2024) (physical abuse), (3)(b) (mental injury), (7) (failure to provide adequate food, clothing, or shelter) and (12) (child desires to have parents relieved of custody). E.H. was adjudicated under section 232.96A(3)(b) and (7).

In an email to the parents' attorney, the case manager explained that she made the decision "after identifying patterns of behavior [the] children were exhibiting before and after visits and Zooms, behaviors beyond what we typically see in removal situations." The email did not describe what those behaviors were or the reason for the abrupt reversal.

After receiving this email, the parents filed a motion for reasonable efforts that asked the juvenile court to order the department to provide the family with supervised video calls and in-person family visits. The State's resistance to the motion was supported by an affidavit from the case manager, who provided this additional explanation about her decision:

> On 1/10/25, [the department] made the decision to temporarily suspend all forms of contact between parents and oldest two children . . . due to the increasing negative impact to the youth even being fully supervised. Mid Iowa and [department] staff are unable to protect [the children] from the hurtful, threatening, abusive non-verbal messages that parents, primarily [the mother], can relay without anyone but the intended recipient noticing. Therefore, suspending all forms of contact is a protective measure that will allow [K.H. and E.H.] time to focus on themselves, not their abusers, while establishing healthy, supportive relationships with their new therapists (and foster parents). . . . [K.H. and E.H.] show signs of emotional distress and inner conflict before and after parent contact. At times, each youth can identify and verbalize what they are feeling rather than act it out. But other times, the inner-conflict surfaces in the form of unhealthy and unsafe behaviors. It is reasonably likely these responses are the result of the parents' abusive and manipulative practices.

Aside from the meeting to create the family interaction plan, the children's contact with the parents had been limited to video calls since their removal. The record contains no further detail about the parents' actions during those calls or the children's responses afterward.

The juvenile court denied the parents' motion for reasonable efforts in its dispositional order, finding that as the case manager

> collected additional information from professional therapists seeing the children, particularly [E.H.'s] counselor, [the department] in consultation with the guardian ad litem stopped visitation between [the children] and their parents. Contact between the siblings continues. The first objective must be to do no further harm. [The mother] continues the narrative that her behavior was a response to the bad behavior of [K.H. and E.H.]. Until [she] moves past the gaslighting of [the children], visitation may not be recommended. The court finds that [the department] reasonably used [its] discretion over visitation at this time and that failure to provide visitation between [the children] with their parents is not a lack of reasonable efforts.

But as the parents pointed out in a motion to enlarge, neither child had a therapist at the time the department suspended contact. E.H. did not start therapy until mid-January, and K.H.'s therapy was delayed until the end of January. In February, E.H.'s therapist reported that she was "still building rapport" with E.H. and recommended that the department "hold off on any contact supervised or otherwise" with the parents. K.H.'s therapist did not make a recommendation. And his guardian ad litem reported that K.H. had only seen that therapist once and was "not interested in attending therapy."

In April, K.H. returned to shelter care after his foster parents notified the department that they could no longer care for him. Staff at the shelter soon reported that his behavior was more than they could handle too. The department accordingly recommended placement in a qualified residential treatment program, which the juvenile court later ordered. During this turbulent time, K.H.'s guardian ad litem reported that he was "back and forth in his emotions about his parents." He sometimes wanted contact with them, but at other times, he understood why

there was no contact.  As K.H. was struggling, E.H. was thriving in her foster home.  But she was also hesitant about contact with the parents, refusing to participate in a parent-child relational assessment with her mother.

Meanwhile, the parents had progressed to unsupervised contact with their four youngest children.  Both were ready to be discharged from mental health therapy, and the mother's test scores on a psychological evaluation "indicated that she has low potential for neglecting and/or abusing her children."  Yet the psychologist who conducted the evaluation concluded that because of

> the animosity and alienation that has occurred in the relationship between the patient and these two children, it does not seem to be in the best interest of these children to be reunited with the patient and her husband.  It is quite clear that the patient's actions were all well-intentioned, but at times seemed to be misguided, resulting in an overreaction to the stress that she was encountering with these seriously disturbed, acting-out . . . children.  In the best mutual interest of these children on the one hand, and [the parents] on the other hand, it seems best that these children remain in foster care.  This clinician is not against, however, [the parents] having supervised visits with them, if they wish to continue to do so.

Ahead of a dispositional review hearing in June, the department reported that its permanency goal remained reunification with the parents.  But it continued to oppose contact between the parents and children until recommended by the children's therapists.  Although the court received a number of documents into evidence at the hearing, including reports from the department and the children's guardian ad litem, no testimony was offered.  However, the case manager reported to the juvenile court that "therapeutically, we're not ready yet" for visits.  The parents resisted that position, with the mother telling the court that she was "looking forward to reunification work, which is contact with my children."

After the hearing, but before the court entered its dispositional review order, the parents filed another motion for reasonable efforts. They asked the court to order the department to "create a plan to implement contact" with the children. And they sought removal of the case manager and her supervisor, alleging that they were impeding reunification. At the end of August, the juvenile court denied the motion in its dispositional review order, finding that it did not have authority to remove or assign department personnel. The court also found that the mother had not satisfactorily complied with its directives to identify "how she psychologically and emotionally abused her children" and "how she manipulated and controlled the professionals working with her children for her own benefit," which it stated was "required for healing and progress." The parents appeal from that order, challenging each of those rulings.

## II.      Standard of Review

Our review of an order entered after a review hearing in a child-in-need-of-assistance proceeding is de novo. *In re S.V.*, 395 N.W.2d 666, 668 (Iowa Ct. App. 1986). Although we are not bound by the juvenile court's factual findings, we afford them weight. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). Our main concern is the children's best interests. *Id.*

## III.      Analysis

### A.      Removal of Case Manager

The parents' challenge to the juvenile court's denial of their motion to remove department personnel focuses on evidence that they contend showed the case manager's bias towards them. But they cited no controlling authority—in juvenile court or on appeal—to support the underlying premise of their argument:

that the court has the power to dictate which employees from the department should provide services to the family.[3] *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Addressing this claim "would require us to don the hat of an advocate," which we decline to do.[4] *In re G.A.*, No. 24-1574, 2024 WL 5153371, at *1 (Iowa Ct. App. Dec. 18, 2024); *see also Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume.").

### B. Suspension of Contact

"Reasonable efforts to reunite parent and child are required prior to the termination of parental rights." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). "Visitation, or 'family interactions,' are a reunification service." *In re R.D.*, No. 22-1966, 2023 WL 2672051, at *6 (Iowa Ct. App. Mar. 29, 2023); *see also M.B.*, 553 N.W.2d at 345 ("The reasonable efforts concept would broadly include a visitation arrangement designed to facilitate reunification . . . ."). "Even when a parent fails 'to comply with the requirements of a court order or the department,' family interactions must continue in child-in-need-of-assistance

---

[3] The parents did cite one of our unpublished cases that found a mother's complaint about "a history of 'bad blood'" between her and a case worker was not preserved for review because she failed to challenge the worker's involvement before the termination hearing. *In re P.S.*, No. 19-0326, 2019 WL 2880044, at *6 (Iowa Ct. App. July 3, 2019). However, that case did not address the merits of the issue presented here.

[4] In any event, although the juvenile court declined to remove the case manager or her supervisor, it ordered the department to "meet as a team with their upper management and determine if they believe it is in the best interest of the children and their parents to make a staff change."

proceedings unless the court or the department finds 'that such interaction would be detrimental to the child.'" *In re B.H.*, No. 25-0504, 2025 WL 1452326, at *3 (Iowa Ct. App. May 21, 2025) (quoting Iowa Code § 232.102A(2)).[5]

In its findings of fact, the court repeated a finding from its ruling on the parents' first motion for reasonable efforts: that the department "reasonably used [its] discretion over visitation at this time and that failure to provide visitation between [the children] with their parents is not a lack of reasonable efforts." Yet in another paragraph of the ruling, the court found that it did "not have enough information currently" to determine whether family interactions would be detrimental to the children, as required by section 232.102A(2). The court then ordered that visitation between the children and their parents "shall occur as recommended by their treatment team to include their individual mental health counselors, guardian ad litems, [court-appointed special advocate], and placements," while warning the department that it "cannot prohibit visitation entirely without meeting the burden" in section 232.102A(2).

Without a finding that family interactions would be detrimental to the children, we conclude the juvenile court should have expressly granted the parents' motion for reasonable efforts and their request for an order directing the

---

[5] As of July 1, 2025, section 232.102A(2) now requires a higher showing to bar family interactions:

> Family interactions shall continue regardless of a parent's failure to comply with the requirements of a court order or the department unless a court finds that substantial evidence exists that the family interactions, whether supervised or unsupervised, would pose a serious risk of physical or emotional harm to the child.

We need not address which version of the statute applies because we find the denial of visitation was improper even under the lower standard in effect at the time of the parents' motion.

department to "create a plan to implement contact." *See B.H.*, 2025 WL 1452326, at *4 (disagreeing with the court's finding that the daughter could not safely interact with her father during fully supervised visits in a therapeutic setting where the father had complied with all recommendations other than sex offender treatment); *In re S.P.*, No. 16-1919, 2017 WL 108798, at *5 (Iowa Ct. App. Jan. 11, 2017) (concluding the court erred in finding reasonable efforts were satisfied when the department impermissibly delegated the visitation decision to the children). We recognize that family interactions are "only one element in what is often a comprehensive, interdependent approach to reunification." *M.B.*, 553 N.W.2d at 345. But, as the heightened standard in section 232.102A(2) makes clear, those interactions remain "one of the primary reunification services." *R.D.*, 2023 WL 2672051, at *8 (cleaned up).

Visitation is "designed to facilitate reunification while protecting the child from the harm responsible for the removal." *M.B.*, 553 N.W.2d at 345. "With the important controls of full supervision and a therapeutic setting," we believe the children would be protected from the harm leading to their removal. *B.H.*, 2025 WL 1452326, at *4. Although the juvenile court found the mother did not make sufficient progress in taking accountability for the children's abuse, that alone is not enough to justify a complete suspension of contact.[6] *See* Iowa Code § 232.102A(2) (requiring family interactions to continue regardless of a parent's failure to comply with the requirements of a court order or the department). The

---

[6] Because of this conclusion, we do not address the mother's complaints about the juvenile court's finding that she failed to satisfactorily comply with its accountability directives.

parents and the children have been participating in individual therapy, and while continued therapy will be necessary to heal from the past abuse, the parents must be allowed to engage with the children to begin that process. The permanency goal for the children remains reunification with their parents, and family interactions provide the means to work towards that goal.

Accordingly, we reverse the juvenile court's finding that the department made reasonable efforts towards reunification and remand for an order requiring the department to develop a family interaction plan. However, the court retains discretion to bar family interactions if the standard in the current version of section 232.102A(2) is met. *See B.H.*, 2025 WL 1452326, at *4. We affirm the rest of the court's dispositional review order.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**